UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6273-CR-HUCK

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

ARIEL HERNANDEZ, et al.,

    *Defendant,*

_____/

## EX PARTE MOTION AND MEMORANDUM FOR APPOINTMENT OF AN ADDITIONAL ATTORNEY WITH EXPERIENCE IN CAPITAL LITIGATION TO ASSIST ASSIGNED COUNSEL

THE DEFENDANT, ARIEL HERNANDEZ, by and through the undersigned counsel, and pursuant to 18 U.S.C. §3005 and 21 U.S.C. §848 (q)(4) and (7), and requests that counsel "learned in the law applicable to capital cases" be appointed to assist previously appointed counsel. In support, defendant states:

1. The indictment in this matter contains a count punishable by death.

2. Defendant has been given notice that the United States Attorney is considering whether to seek authorization from the Attorney General of the United States to ask for the penalty of death, upon conviction of the capital count. Regardless of the United States Attorney's decision, the Attorney General may direct a capital prosecution. Further, undersigned has been advised that both the United States Attorney and the Attorney General's Capital Case Review Committee will accept written and oral submissions as to whether the death penalty will be sought in this matter. Counsel will also be accorded a meeting with the Attorney General's Review Committee of the Department of Justice. United States Attorney Manual §9-10.000.

*United States v. Ariel Hernandez*
CASE NO. 00-6273-CR-HUCK

    3. 18 U.S.C. §3005 states:

> Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, *shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases*, and who shall have free access to the accused at all reasonable hours. In assigning counsel under this section, the court shall consider the recommendation of the Federal Public Defender organization, or, if no such organization exists in the district, the Administrative Office of the United States Courts. (Emphasis added).

    4. The Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, FEDERAL DEATH PENALTY CASES: RECOMMENDATIONS CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (May, 1998), at 40, www.uscourts.gov/dpenalty/1COVER.htm, made the following recommendation:

> 1a.    <u>Qualifications of Counsel.</u> As required by statute, *at the outset of every capital case*, courts should appoint two counsel, at least one of whom is experienced in and knowledgeable about the defense of death penalty cases. Ordinarily, "learned counsel" should have *distinguished prior experience* in the trial, appeal, or post-conviction review of federal death penalty cases, or distinguished prior experience in *state* death penalty trials, appeals, or post-conviction review that, in combination with co-counsel, will assure high quality representation. (Emphasis added.)

The Commentary states as follows:

> Recommendation 1(b) calls for the appointment of specially qualified counsel "at the outset" of a case, because virtually all aspects of the defense of a federal death penalty case, beginning with decisions made at the earliest stages of the litigation, are affected by the complexities of the penalty phase. *Early appointment of "learned*

2

<u>United States v. Ariel Hernandez</u>
CASE NO. 00-6273-CR-HUCK

> *counsel" is also necessitated by the formal "authorization process" adopted by the Department of Justice* to guide the Attorney General's decision-making regarding whether to seek imposition of a death sentence. (See United States Attorney's Manual § 9-10.000.) Integral to the authorization process is a presentation to Justice Department officials of the factors which would justify not seeking a death sentence against the defendant. A "mitigation investigation" therefore must be undertaken at the commencement of the representation. Since an early decision not to seek death is the least costly way to resolve a potential capital charge, a prompt preliminary mitigation investigation leading to effective advocacy with the Justice Department is critical both to a defendant's interests and to sound fiscal management of public funds. (Emphasis added).

5. The relevant CJA guideline governing representation in federal capital cases expressly contemplates an appointment of an additional attorney:

> 6.01  <u>Appointment of Counsel in Capital Cases</u>
>
> A.  <u>Number of Counsel</u>
>
> (1) <u>Federal Capital Prosecutions</u>, Pursuant to 18 U.S.C. §3005, a person charged with a federal capital offense is *entitled* to the appointment of two attorneys, at least one of whom shall be learned in the law applicable to capital cases.

Administrative Office of the United States Courts, *Guide to Judiciary Policies and Procedures*, Vol. VII (Appointment of Counsel in Criminal Cases), section A, 6.01(A)(1) (emphasis added).

6. Mr. Hernandez will be denied his right to effective assistance of counsel under the Sixth Amendment, his right to due process and equal protection under the Fifth Amendment, as well as being subjected to cruel and unusual punishment in violation of the Eighth Amendment, if he is not provided an attorney with capital litigation experience to assist undersigned in his presentation to the United States Attorney, as well as the Attorney General's Capital Case Review Committee.

3

Undersigned counsel requests that counsel "learned in the law applicable to capital cases" be appointed to assist counsel because such an attorney possesses necessary expertise in the investigation and presentation of mitigating information. 18 U.S.C. §3005.

7. 21 U.S.C. § 848(q)(7) clearly evidences a Congressional intent that capital litigation experience be an appropriate consideration when a district court is contemplating the appointment of counsel in a federal capital case. District courts are told to give "due consideration" to the "seriousness of the possible penalty and the unique and complex nature of the litigation."

8. Defendant relies upon the attached memorandum in support.

## MEMORANDUM IN SUPPORT

### A. Unique nature of death penalty cases

In *Powell v. Alabama*, 287 U.S. 45, 71 (1932), the Supreme Court had before it the notorious case of the "Scottsboro boys". Recognizing that death penalty cases are different,[1] the Court held that indigent capital defendants have the right to court-appointed counsel. It is now well established, not surprisingly in a capital case, that the Sixth Amendment requires more than just nominal counsel, rather it demands a lawyer with "skill and knowledge" in capital litigation. *Strickland v. Washington,*

---

[1] Apparently each justice of the United States Supreme Court now agrees that more stringent rules apply to capital cases. *See, e.g., Eddings v. Oklahoma*, 455 U.S. 104, 117 (1982) (O'Conner, J., concurring); *Rummel v. Estelle*, 445 U.S. 271, 273 (1980). Because of the uniqueness of death as a sanction, additional protections are afforded to defendants in federal capital cases. For example, 18 U.S.C. § 3005 provides for the appointment of two defense attorneys in capital cases, 18 U.S.C. § 3432 requires that the Government disclose its witnesses and list of veniremen at least three days before trial, and Rule 24(b) of the Federal Rules of Criminal Procedure provides for an increase in the number of peremptory challenges in capital cases.

This difference is mandated by the federal constitution. *See, e.g., Beck v. Alabama*, 447 U.S. 625, 638 (1980) (rejecting a rule disallowing lesser included offense instructions in capital cases. Eighth Amendment prohibits "rules that diminish the reliability of the guilt determination" and "enhance[ ] the risk of an unwarranted conviction."). Capital "factfinding procedures [must] aspire to a heightened standard of reliability." *Ford v. Wainwright*, 477 U.S. 399, 411 (1986), citing *Spaziano v. Florida*, 468 U.S. 447, 456 (1984). *See also Harmelin v. Michigan*, 501 U.S. 957, 994 (1991); Carol S. Steiker & Jordan M. Steiker, *Sober Second Thoughts: Reflections on Two Decades of Constitutional Regulation of Capital Punishment*, 109 Harv. L. Rev. 355, 397 (1995).

4

*United States v. Ariel Hernandez*
CASE NO. 00-6273-CR-HUCK

466 U.S. 668, 686-88 (1984). In the modern era, counsel cannot possess the necessary "knowledge" without capital litigation experience or the assistance of co-counsel with such. Federal statutes and guidelines reflect this reality.

By their nature, death penalty cases involve "extraordinary circumstances and unusual representation". *White v Board of Commissioners*, 537 So.2d 1376, 1380 (Fla. 1989), quoting *Makemsom v Martin Co.*, 491 So.2d 1109, 1110 (Fla. 1986), *cert den.*, 479 U.S. 1043 (1987). They "raise complex additional legal and factual issues beyond those raised in an ordinary felony trial." *People v Bigelow*, 691 P.2d 994 (Cal. 1985). Capital litigation is "highly specialized" and requires dealing with "seemingly innumerable refinements put on *Gregg v Georgia*, 428 U.S. 153 (1976) and its progeny." *Irving v State*, 441 So.2d 846, 856 (Miss. 1983). In *White*, 537 So.2d at 1380, the trial judge held that a capital prosecution was "not sufficiently complex" so as to justify exceeding the statutory cap. To lay the issue to rest, the Florida Supreme Court stated:

> *We find that all capital cases by their very nature can be considered extraordinary and unusual ...*

This holding merely stated the obvious "for the dreadful responsibility involved in trying to save a man from electrocution." *Makemsom*, 491 S.2d at 1111.

Death cases are different not only because of the penalty but because of the extraordinary preparation involved in conducting the unparalleled investigation into the client's personal life and family history. *See generally* Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.L. REV 299 (1983); Gredd, *Washington v Strickland: Defining Effective Assistance of Counsel at Capital Sentencing*, 83 COLUM.L.REV 1544 (1983); American Bar Association, Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases

5

(1988). The American Bar Association Guidelines for Selection and Performance of Appointed Counsel in Death Penalty Cases unequivocally call for at least two attorneys with some capital litigation experience to represent a capital defendant at each stage in a capital case.

### B. Congressional Intent and Sound Judicial Policy Both Favor the Appointment of Highly Qualified, Death Penalty Experienced, Counsel in Federal Capital Cases Prior to the Attorney General's Decision Whether to Seek the Death Penalty

18 U.S.C. § 3005 requires "*upon the defendant's request,*" the appointment, after indictment for a "capital crime," at least one lawyer "learned in the law applicable to capital cases ..." Although undersigned counsel meets the qualifications for court-appointed counsel under 21 U.S.C. § 848(q)(4) - (8), that code section established only a *minimum* standard of experience and qualifications for appointed counsel, and clearly evinces a Congressional intent that attorneys with capital defense experience should be appointed in federal capital cases. For that reason, the statute invites the appointing court to disregard formal criteria where necessary to secure the services of an attorney "whose background, knowledge and experience ... would enable him or her to properly represent the defendant, *with due consideration of the seriousness of the possible penalty and the unique and complex nature of the litigation.*" 21 U.S.C. §848(q)(7) (emphasis added). Likewise, in subsection (10), which renders inapplicable to capital cases usual statutory limitations on rates of compensation for appointed counsel, Congress manifested a clear intent to ensure the best possible representation to defendants facing imposition of the death penalty under federal law. The appointment of expert counsel is especially critical if that Congressional goal is to be met.

The Attorney General approves seeking the death penalty as to approximately 30% of the defendants reviewed. The Attorney General permits withdrawal of a decision to seek the death

penalty, after it has been made, only in 12% of such cases. Therefore, it is clear that the Department of Justice internal "authorization" process is one of the most, if not the most, critical stage of a federal capital prosecution. Therefore, defendant requires the assistance of "learned counsel," pursuant to 18 U.S.C. §3005 at this time.

WHEREFORE, defendant respectfully requests that this Court appoint counsel "learned in the law applicable to capital cases" to assist undersigned counsel in his representation of defendant during the death penalty approval process within the Department of Justice. The undersigned believes that this appointment is necessary at this time to guarantee adequate representation of the defendant.

Respectfully submitted this __19__, day of __Dec.__ 2000.

Respectfully submitted,

JEFFREY D. WEINKLE, ESQ.

**NOTICE**

Please take notice that the above motion has been tendered to chambers under seal this __20__ day of __Dec__, 2000 to be heard *ex parte* at such other time as the Court may direct.

JEFFREY D. WEINKLE, ESQ.
1035 NW 11th Avenue
Miami, FL 33136-2911
Tel: 305-373-4445
Fax: 305-545-8514

JEFFREY D. WEINKLE
FBN: 271934

7