UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**NIGHT BOX FILED**
MAY 3 0 2001
CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

CASE NO. 00-6273-CR-HUCK/BROWN

UNITED STATES OF AMERICA,          :

        PLAINTIFF,          :

v.          :

ANTHONY TRENTACOSTA, et. al.,          :

        DEFENDANTS.          :

### GOVERNMENT'S RESPONSE TO DEFENDANTS TRENTACOSTA'S, HERNANDEZ' AND CHIUSANO'S MOTIONS FOR SEVERANCE

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files its response in opposition to defendants Anthony Trentacosta's, Ariel Hernandez' and Julius Bruce Chiusano's motions for severance.[1]

### ALLEGATIONS CONTAINED IN THE INDICTMENT

All nine defendants charged in the referenced indictment are named in Count I, the Racketeering Conspiracy. Paragraph 4 of Count I sets forth the pattern of racketeering activity as

---

[1] The instant Response addresses those issues raised in the following motions which are before the Court: Motion by Ariel Hernandez to Sever the Trial of All Co-defendants or in the Alternative Motion in Limine to Preclude Introduction of Statements Made by Co-defendants After Ariel Hernandez Was No Longer a Member of the Conspiracy (DE 183); Motion by Ariel Hernandez to Sever Counts 17 and 18 and to Strike Allegations of the Murder of Jeanette Smith (DE 188); Motion by Julius Bruce Chiusano for Severance of Counts 17-20 (DE 197); and Motion by Anthony Trentacosta for Severance (DE 227).

1

follows:

> 4. The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), through which the defendants and their co-conspirators agreed to conduct and participate in the conduct of the affairs of the enterprise consisted of multiple acts or threats involving Murder, in violation of Section 782.04 Florida Statutes; and Extortion, in violation of Section 836.05 Florida Statutes; and acts which are indictable under the following provisions: Making Extortionate Extensions of Credit, in violation of Title 18, United States Code, Section 893; Collection of Extensions of Credit by Extortionate Means, in violation of Title 18, United States Code, Section 894; Fraud and Related Activity in Connection with Identification Documents and Information, in violation of Title 18, United States Code, Section 1028; Bank Fraud, in violation of Title 18, United States Code, Section 1344; Theft from Interstate Shipments in violation of Title 18, United States Code, Section 659; Interference with Commerce by Threats or Violence, in violation of Title 18, United States Code, Section 1951; and Obstruction of Justice, in violation of Title 18, United States Code, Section 1503.

Additional allegations in the indictment concerning murder, conspiracy to commit murder and accessory after the fact to murder are found on pages 11 and 12 of the indictment at paragraphs j through n of the RICO conspiracy count (Count 1), the conspiracy to commit RICO murder count (Count 17) at pages 17 through 19, the RICO murder count (Count 18) at pages 19 and 20, the accessory after the fact to murder count (Count 19) at page 21, and the conspiracy to commit murder count (Count 20) at pages 21 through 23.[2]

---

[2] Counts 17 through 19 concern the murder of Jeanette Smith, which occurred on or about March 20, 1999. Count 20 concerns the conspiracy to murder Ariel Hernandez, which occurred thereafter.

ARGUMENT

Both Trentacosta and Chiusano contend that the introduction in a joint trial of evidence that Massaro, Hernandez, Silverman, Monico, Banks and Garcia engaged in acts involving murder would be overly prejudicial and therefore their trial should be severed from the others. Chiusano relies upon Rules 8 and 14, Fed.R.Crim.P., in support of his position. Trentacosta apparently relies solely upon Rule 14, Fed.R.Crim.P., in support of his position. Neither Rule provides a basis for severance in this case.

Initially the government notes that determinations under Rule 8 and Rule 14 are entirely separate. See, United States v. Lane, 474 U.S. 438, 449 n.12 (1986); United States v. Hernandez, 921 F.2d 1569, 1578 (11th Cir. 1991). Consequently, even though Chiusano has essentially combined these rules in his motion, the government will address Rules 8 and 14 seriatim.

A.   Joinder of the Defendants and Counts Set Forth in the Indictment was Proper.

Rule 8, Fed.R.Crim.P., states as follows:

> (a)   **Joinder of Offenses**. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
>
> (b)   **Joinder of Defendants**. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.P.8.

Joinder of parties and defendants under Rule 8 is designed to promote judicial economy and efficiency. The Eleventh Circuit has held that Rule 8 "is broadly construed in favor of the initial joinder." United States v. Weaver, 905 F.2d 1466, 1476 (11th Cir. 1990) (quoting United States v. Davis, 773 F.2d 1180, 1181 (11th Cir. 1985). The determination of the propriety of the initial joinder is to be determined by the district court prior to trial by examination of the allegations stated on the face of the indictment.

The indictment in this case charges, inter alia, a RICO conspiracy from October 1994 through September 2000. All nine defendants are named in the RICO conspiracy (Count 1). The overall object of the conspiracy, set forth at page 8 of the indictment, was as follows:

> 6. The object of the racketeering conspiracy which the defendants sought to achieve was to derive profit from the illegal activities committed through the operation of the enterprise in such a manner as to avoid detection by law enforcement authorities.
>
> 7. It was further an object of the conspiracy that each defendant agreed that a conspirator would commit at least two racketeering acts and participate in the collection of one unlawful debt in conducting the affairs of the enterprise.

The indictment then sets forth the means and methods of the racketeering conspiracy in great detail. It is clear from the allegations in the indictment that the "acts described in the indictment are tied by a 'common thread' to each other or the participants." United States v. McLain, 823 F.2d 1457, 1467 (11th Cir. 1987) (quoting United States v. Weinstein, 762 F.2d 1522, 1541 (11th Cir. 1985)).

The indictment describes an ongoing conspiracy in which the defendants engaged in a pattern of criminal activity in order to generate illegal profits through the operation of the South Florida crew of the Gambino Crime Family for the benefit of that organized crime group. All of the acts alleged in the indictment, including those involving murder, were undertaken in order to advance the interests of the South Florida crew and, concomitantly, those of the Gambino family. "The government is not required to prove that a conspirator had full knowledge of all the details of the conspiracy; knowledge of the essential nature of the plan is sufficient.'" United States v. McLain, 823 F.2d at 1467 (quoting United States v. Brasseauz, 509 F.2d 157, 160n.3 (5th Cir. 1975)). Therefore, the fact that the indictment does not allege that Chiusano and Trentacosta knew of the other defendants' involvement in the murder of Jeanette Smith is not controlling.[3] What is important is that they knew of the crew's involvement in a pattern of criminal activity which was being undertaken on a continuous basis. The common objectives, methods and participants alleged in the indictment more than establish the "common thread" required for joinder under Rule 8, Fed.R.Crim.P. The former Fifth Circuit has held as follows:

> It is true that the defendants in this case were alleged to have committed different predicate crimes. Indeed, if this was not a RICO case, the defendants would have a valid argument of misjoinder – those defendants alleged to have extorted money from tonk operators hardly engaged in the same "series of acts or transactions" as the defendants who allegedly paid bribes to the sheriff to operate as a monopoly. The gist of the RICO offense, however, is that the

---

[3]Parenthetically, the government notes that, while the evidence as currently constituted does not establish that Trentacosta was aware of Smith's murder prior to its commission, the evidence at trial will establish complicity on the part of Trentacosta in the later conspiracy to murder Ariel Hernandez. Trentacosta's involvement in this later act of violence renders his request for a severance shallow.

5

> defendant, through a pattern of predicate crimes, furthered a racketeering enterprise. The offense charged here is not the commission of the predicate crimes but the furthering of the enterprise. United States v. Elliot, 571 F.2d 880 (5th Cir.), cert. denied, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). Thus viewed, it is clear the defendants were alleged to have participated in the same offense and joinder was not improper under Rule 8.

United States v. Bright, 630 F.2d 804, 813-14 (5th Cir. 1980). See also United States v. Elliot, supra, 571 F.2d at 903 ["under the [RICO] statute, it is irrelevant that each defendant participated in the enterprise's affairs through different, even unrelated crimes, so long as we may reasonably infer that each crime was intended to further the enterprise's affairs."]. See also, United States v. Simon, 839 F.2d 1461, 1472 (11th Cir. 1988) [Rule 8(b) ... makes clear that joinder of the defendants for trial is proper where the indictment charges multiple defendants with a single conspiracy and also charges some of the defendants with substantive counts arising out of the conspiracy."]; United States v. Alvarez, 755 F.2d 830, 857 (11th Cir. 1985) ["Joinder under Rule 8(b) ... is proper where, as here, an indictment charges multiple defendants with participation in a single conspiracy and also charges some but not all of the defendants with substantive counts arising out of the conspiracy."]; United States v. Friedman, 854 F.2d 535, 561 (2d Cir. 1989) [The presence of RICO charges "further broadens the government's power to charge multiple defendants together."].

B. The Defendants Are Not Entitled to a Severance Under Rule 14, Fed.R.Crim.P.

Although the defendants do not distinguish in terms of which of their arguments relate to Fed.R.Crim.P. 8 as opposed to Fed.R.Crim.P. 14, most of their arguments go to the issue of prejudicial spillover associated with Rule 14, Relief from Prejudicial Joinder. Rule 14 provides in pertinent part:

6

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires . . .

Fed.R.Crim.P.14

Rule 14 governs whether joinder is improper based upon evidence proffered before or adduced during trial. United States v. Weaver, 905 F.2d at 1476 (citing United States v. Morales, 868 F.2d 1562, 1567-68 (11th Cir. 1989). [4] The district court must, in applying Rule 14, balance the right of the defendants to a fair trial against the interest of judicial economy and efficiency. United States v. Castillo-Valencia, 917 F.2d 494, 498 (11th Cir. 1990). "The general rule in this circuit is that defendants who are jointly indicted should be tried together, and this rule has been held to be particularly applicable to conspiracy cases." Id. (citing United States v. Alvarez, 755 F.2d 830, 857 (11th Cir. 1985). The preference for a joint trial of multiple defendants in conspiracy cases reflects the sound policy of joinder where charges may be proven with substantially the same evidence. United States v. Dorsey, 819 F.2d 1055, 1058 (11th Cir. 1987). The fact that a defendant may have a better chance at acquittal if tried separately does not alone entitle him to a severance. United States v. Cassano, 132 F.3d 646, 651 (11th Cir. 1998).

"Rule 14's concern is to provide the trial court with some flexibility when a joint trial may appear to risk prejudice to a party; review of that decision is for an abuse of discretion." United States v. Lane, 474 U.S. 438, 439 n.12 (1986). To prevail on a motion for severance under Rule 14, a

---

[4] Defendants' motions for severance under Fed.R.Crim.P. 14 would appear to be premature as no evidence has been proffered or admitted at trial. However, the government will address the motions which will undoubtedly be raised again at trial should this Court deny the pending motions for severance.

7

defendant must demonstrate that the jury was not capable of independently evaluating the evidence against each defendant. United States v. Hernandez, 921 F.2d 1569, 1578 (11th Cir. 1992) (citations omitted). Thus the prejudice must be clearly beyond the curative powers of a cautionary instruction, United States v. Alvarez, 755 F.2d at 857, and reach the level of "compelling prejudice." "As we have explicitly stated, 'compelling prejudice' is more than some prejudice, as some degree of prejudice is inherent in every joint trial." United States v. Hernandez, 921 F.2d at 1580 (citations omitted). Therefore, the defendant bears a heavy burden in establishing grounds for severance. The rationale for favoring joint trials has been expressed as follows:

> It would impair both the efficiency and fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability – advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

Richardson v. Marsh, 107 S.Ct. 1702, 1708-09 (1987).

There is no indication that the jury in the instant case will not be able to consider each count and defendant separately. There is almost always a variance among defendants charged with RICO as to the strength of their connection with the enterprise and the facts of racketeering of which they have been accused. This does not require a severance. See United States v. Watchmaker, 761 F.2d

8

1459, 1476-77 (11th Cir. 1985) (trial court did not abuse its discretion in denying defendants' motion for severance in RICO prosecution even though defendants varied in strength of their connection with criminal enterprise and in the number of acts of racketeering of which they had been accused, since there was sufficient evidence to suggest that each had at least temporarily association with the "club" in question and had committed at least two predicate acts of racketeering; acquittal of one defendant demonstrated that jury was able to make individualized determinations). In addition, because the defendants participated in a single RICO conspiracy, the evidence complained of would still be admissible against the defendants in a separate trial as acts of co-conspirators in the furtherance of a conspiracy. See United States v. Friedman, 854 F.2d 535, 563 (2d Cir.. 1988); United States v. Elliot, supra. Therefore the granting of a severance herein would not shield the defendants from the admission of the same evidence even at separate trials.

In United States v. LeCompte, 599 F.2d 81 (5th Cir. 1979), the court analyzed the concept of alleged prejudicial spillover within the framework of a RICO conspiracy charge:

> Both appellants assert that they were the victims of devastating spillover from testimony describing acts of co-defendants, especially the prostitution ringleader Billy Johnson, including beatings, pistol whippings, threats of killing, and other unsavory activities in which appellants were not involved. The evidence against appellants is not as strong as that against other defendants and they were not shown to be involved in the foregoing violent acts. But the Constitution does not require that in a charge of group crime a trial be free of any prejudice but only that the potential for transferability of guilt be minimized to the extent possible. U.S. v. Elliot, 571 F.2d 880 (CA5, 1978). This standard was met here. The court properly refused a requested charge that the acts of Billy Johnson could not be "chargeable or imputed" to the other defendants. If the acts were done in furtherance of the conspiracy and appellants were members of the conspiracy, the law makes appellants responsible for the acts however repugnant. The court adequately protected appellants' rights by instructing the jury that it should consider the evidence separately as to each defendant and each count.

Id. at 82-83. Similarly, in United States v. Lee Stoller Enterprises, Inc., 652 F.2d 1313 (7th Cir. 1981), the Court held as follows:

> Defendants here, as in most RICO cases, were alleged to have committed different predicate crimes. But in a trial on RICO charges, a particular defendant may be the victim of spillover testimony regarding other, more violent or heinous, predicate crimes. This can happen because the specific purpose of the substantive provisions of RICO is to tie together diverse parties and crimes. Under RICO, it is irrelevant that each defendant participated in the enterprise's affairs through different and unrelated crimes.
>
> * * *
>
> Although the defendants used different means, they were alleged to have participated in the same offense: furtherance of the enterprise. Therefore, severance was not required.

Id. at 1319

In United States v. Eufrasio, 935 F.2d 553, 568 (3rd Cir. 1991), defendants Eufrasio and Iacona were charged with RICO conspiracy predicated upon gambling and extortion activity. They were joined in that charge by defendant Idone, who was additionally charged with having engaged in a conspiracy to commit murder. In upholding the trial judge's denial of severance motions, the Court recognized that all three defendants were charged with the same conspiracy to participate in the same enterprise, that common evidence of gambling and extortion activity would have been admissible against each defendant in separate trials, and that the evidence of the murder conspiracy proved the nature, history and means of the enterprise charged against each defendant. Consequently, the Court held that "[t]he substantial public interest in the judicial economy of a joint trial outweighs the potential for prejudice to Iacona and Eufrasio associated with evidence of Idone's murder

conspiracy." Id. at 569. Similarly, in the instant case, the allegedly prejudicial evidence would be admissible even at separate trials in order to establish the existence, nature and continuity of the enterprise with which the defendants Chiusano and Trentacosta were associated. See, United States v. Windom, 19 F.3d 1190, 1198 (7th Cir. 1994) ["prejudice requiring severance is not shown if evidence on the severed counts would be admissible in the trial of the remaining counts"]; United States v. Ballis, 28 F.3d 1399, 1408 (5th Cir. 1994) ["No prejudice inures to the defendant where a severance of counts would not result in a segregation of evidence."].

C. Hernandez is Not Entitled to a Severance

By separate motion (DE 188), Hernandez seeks a severance of the murder charges with which he is charged from the remainder of the indictment, and apparently seeks to strike allegations concerning those acts involving murder from the RICO conspiracy count. The gist of the defendant's argument is that those crimes and acts should be severed and/or stricken because the defendant simply is not guilty of the crimes with which he is charged in the pending case. Asserting such grounds for relief are, at this stage of the proceedings, premature at best. In United States v. Critzer, 951 F.2d 306 (11th Cir. 1992), the court addressed the parameters within which the trial court may examine the sufficiency of an indictment:

> There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. Moreover, this court is constitutionally barred from ruling on a hypothetical question. The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute.

Id. at 307. See also, United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987) ["Under

11

Fed.R.Crim.P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial."]; United States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082 (5th Cir. 1978).

In the case at bar, the indictment sufficiently alleges, at pages 10 and 11, that the murder of Jeanette Smith was procured, commanded and induced by defendant Massaro for the benefit of the enterprise, that defendant Hernandez would commit the murder of Jeanette Smith for the benefit of the enterprise, and that defendants Massaro, Monico, Banks and others would assist Hernandez in disposing of evidence of the murder and taking other steps to avoid detection and arrest for the murder, all for the benefit of the enterprise. Therefore, the charges and allegations of murder are properly joined within the pending indictment, are sufficiently pled, and there is no basis upon which the court can properly sever or strike those sections.

In another motion (DE 183), defendant Hernandez seeks a Severance based upon his alleged withdrawal from the conspiracy following his arrest on March 28, 1999. In the alternative, Hernandez seeks to preclude the introduction of co-conspirator statements made after that date. The defendant Hernandez is not entitled to either forms of relief. First, as conceded in the defendant's motion, withdrawal is an affirmative defense which must be established at trial; it is a question for the jury. Second, the government is unaware of any cases in which the court has mandated a severance based upon such grounds. As set forth hereinabove, in order to warrant a severance, the defendant must establish "compelling prejudice" which is clearly beyond the curative powers of a cautionary

instruction. United States v. Alvarez, supra. In the instant case, the conspiracy charged in the indictment commenced in 1994 and continued into 2000. Even if some of the evidence presented at trial were inadmissible against Hernandez, an instruction to the jury would suffice and a severance would not be mandated. Lastly, the defendant's assertion that his actions constituted a withdrawal from the conspiracy is specious. Following his arrest on March 28, 1999, the defendant Hernandez gave several statements to law enforcement officers. He first claimed that the death of Smith was an accident which occurred while he was engaged in a sexual act with her. Approximately ten days later, he claimed to have had no role in her death and asserted that she was murdered by two Colombian males known only as Enrique and Francisco. The government respectfully asserts that the evidence in the instant case contradicts both of these versions of the events, and establishes that the murder of Jeanette Smith was premeditated and undertaken for the benefit of the enterprise. Significantly, on March 29, 1999 and on April 1, 1999, Hernandez placed telephone calls from the Broward County Jail to Massaro. These telephone calls were surreptitiously monitored and recorded. During these telephone calls, Hernandez assured Massaro that he was taking "the whole rap," and that the story which Hernandez was claiming was that the death of Smith occurred as a result of rough sex "so that nobody else will get incriminated." Thus, the evidence establishes that, even following his arrest, Hernandez continued to associate with the enterprise and engage in acts constituting obstruction of justice for the benefit of those other persons who were associated therewith. However, as set forth hereinabove, these are factual matters which must be developed at trial, and they provide no basis upon which the court may properly grant either a severance or a motion to strike at this stage of the proceedings.

## CONCLUSION

It is clear from the allegations in the indictment that the acts described are sufficiently tied by a common thread to each other or the participants to satisfy Fed.R.Crim.P. 8. The counts and defendants were properly joined and the defendants have failed to establish that the anticipated prejudicial spillover will deprive them of a fair trial. The interests of judicial economy and efficiency outweigh the prejudice which is inherent in any joint trial, especially one involving a RICO conspiracy. Therefore, the defendants' motions for severance should be denied.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
LAWRENCE D. LaVECCHIO
Assistant U.S. Attorney
Fla. Bar No. 0305405
500 E. Broward Blvd., 7th Floor
Ft. Lauderdale, Florida 33394
(954) 356-7255/(954) 356-7230 - fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered by U.S. mail to the following on this 30th day of May, 2001.

Richard K. Houlihan, Esq. **(for Anthony Trentacosta)**
300 Aragon Avenue, Ste. 310
Coral Gables, Florida 33134

William D. Matthewman, Esq. **(for Ariel Hernandez)**
2300 Glades Rd., Suite 340 - West Tower
Boca Raton, Florida 33431

Fred Haddad, Esq. **(for Frederick J. Massaro)**
One Financial Plaza, Suite 2612
Fort Lauderdale, Florida 33394

Christopher A. Grillo, Esq. **(for Frederick J. Massaro)**
1 East Broward Blvd., #700
Ft. Lauderdale, Florida 33301

Samuel D. DeLuca, Esq. **(for Francis Ruggiero)**
3451 John F. Kennedy Blvd.
Jersey City, New Jersey 07307

Jeffrey Weinkle, Esquire **(for Ariel Hernandez)**
1035 NW 11th Avenue
Miami, Florida 33136

Donald Spadaro, Esquire **(for Julius B. Chiusano)**
1000 S. Federal Highway, Suite 103
Fort Lauderdale, Florida 33316

Michael G. Smith, Esquire **(for Adam Todd Silverman)**
633 SE 3rd Avenue, Suite 4F
Fort Lauderdale, Florida 33301

Albert Z. Levin, Esquire **(for Carlos Garcia)**
888 Brickell Avenue, Sixth Floor
Miami, Florida 33131

Thomas Almon **(for Charles P. Monico)**
321 NE 26th Street
Miami, Florida 33137

Manuel Gonzalez, Esquire **(for Anthony R. Banks)**
782 NW Le Jeune Road, Suite 440
Miami, Florida 33126

LAWRENCE D. LaVECCHIO
Assistant United States Attorney