00-6273.rr10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6273 CR HUCK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ARIEL HERNANDEZ, et al.,

    Defendants
_____/

## REPORT AND RECOMMENDATION

**This Cause** is before the Court on Defendant Ariel Hernandez' Motion to Suppress Confessions, Admissions and Statements, filed March 2, 2001. The Court has reviewed the Motion and the Response. Additionally, an evidentiary hearing was held on September 4, September 11 and September 26, 2001, and this Court adopts the transcript of those hearings by reference herein.

### Facts and Discussion

Defendant moves to suppress three statements:

1. March 28, 1999:   Statement to Broward Sheriff's Office Detectives

2. March 28, 1999:   Statement to FBI Agents

3. April 8, 1999:    Statement to FBI Agents

After hearing the evidence, the Court finds that Defendant made all three statements freely and voluntarily, after he was given <u>Miranda</u> warnings and waived his right to remain silent.

**March 28, 1999 Statements**

Broward County Sheriff's Detective Frank Ilarraza testified concerning a statement made to

detectives following his arrest on March 28, 1999.[1] Detective Ilarraza accompanied by two other BSO detectives, and three local police officers, executed the arrest warrant on Defendant at an apartment in Sunny Isles where he and his girlfriend, Ms. Bubel, were staying. Defendant voluntarily accompanied Detective Ilarraza to the BSO office, after telling the detectives that he "knew a lot of people that were connected" and could give the detectives information, and mentioned the name of Co-Defendant Frederick Massaro.[2] Prior to leaving the apartment, Defendant signed a consent to search form.

Upon arriving at the Broward Sheriff's Office, Defendant was read his <u>Miranda</u> warnings in English, and signed a <u>Miranda</u> rights waiver form at 10:58 a.m.. Prior to speaking with Defendant, Detective Ilarraza interviewed Ms. Bubel, who stated that Defendant had confessed to killing Ms. Smith during a sexual encounter, and disposing of her body. Detectives Ilarraza and Devine interviewed Defendant, who initially stated that Ms. Smith had given him a ride home one night and that when she dropped him off, he saw two men named Enrique and Frankie following her. When the Detectives told Defendant that they knew that Ms. Smith had been killed in a hotel room in which Defendant had been staying, Defendant changed his story, and stated that he observed Defendant Massaro choke Ms. Smith with a belt.

After about an hour and a half, the Defendant took a bathroom break. When he came back, Detective Devine left the interview and Detective Thomasevich came in. The Detectives told Defendant what Ms. Bubel had stated, and Detective Thomasevich told Defendant that if the death

---

[1] The arrest warrant was in relation to the murder of Jeanette Smith, whose body was found, tied with some type of ligature, inside of a stereo box in the Everglades.

[2] Detective Ilarraza testified that he spoke in both Spanish and English to Defendant, because he wanted to see if Defendant was an anonymous caller whom he had previously spoken with.

2

had anything to do with rough sex, Defendant needed to tell them. At that point, Defendant changed his story again and stated that he had killed Ms. Smith during sex and then disposed of her body.

The Detectives then took a taped sworn statement from Defendant at 4:05 p.m.. At no time during the interview were there any threats or violence. Detective Ilarraza further testified that the detectives made no promises to Defendant in connection with his statement.

Detective Ilarraza then brought in FBI agents to interview Defendant because Defendant had said that he had organized crime information and agreed to speak with them. FBI Special Agent William Grover testified regarding the continued interview by FBI. Upon entering the interview room, Detective Ilarraza advised Agent Grover that Defendant had waived his rights, but because Agent Grover wanted to ensure that Defendant wished to continue his cooperation, he had Defendant initial a sheet which acknowledged that he had waived his rights. Defendant offered information concerning his involvement with the Gambino crime family and certain criminal activities and gave written consent to search his apartment.

Special Agent Grover testified that during the interview, there were never any threats or promises made to Defendant, and Defendant never asked what might happen to him.

**April 8, 1999 Statement**

Sergeant Grover further testified that on April 8, 1999, there was a subsequent interview of Defendant by FBI agents at the BSO office, which followed a communication by Defendant's attorney, Jerry Velazquez, who indicated that Defendant wished to continue his cooperation. Mr. Velazquez brought a bag full of belts, which were evidence in the case, to the interview at Defendant's request. Defendant was interviewed by FBI Agent Terry Feisthammel.

Detective Ilarazza, who observed the interview on a monitor, testified that prior to the

interview, Mr. Velazquez told Defendant that he would be waiting in the hall if he needed him, but at no time during the interview did Defendant request to speak with his attorney. This was confirmed by Sergeant Grover, who was present during the interview. Sergeant Grover additionally testified that they never discussed with Defendant any promises for his cooperation.

Attorney Jerry Velazquez testified that prior to the April 8 interview, Defendant told him that the only reason he cooperated with BSO was because they told him he could plead guilty to manslaughter and that the FBI talked to him regarding putting him in a witness protection program, contingent on the nature and usefulness of the information he would provide. In order to ensure that this was true, prior to the April 8 interview, Mr. Velazquez spoke with the FBI. After the conversation, Mr. Velazquez told Defendant that what the FBI told him regarding the witness protection program did not comport with what Defendant had said, except generally. He advised Defendant that the FBI had made no specific promises, however Defendant chose to give a statement anyway.

Mr. Velazquez further testified that he waited in the lobby while Defendant was in the April 8 interview, then after about one and a half to two hours, he went to the receptionist on two occasions to inquire how things were progressing. An agent came out to talk to him on both occasions. After another short period of time, Mr. Velazquez stated that he needed to talk to his client and the interview stopped.

**Were the Statements Voluntary?**

Post-arrest statements of an accused are presumptively inadmissible in a court of law unless the government can establish that the statements were made voluntarily and after the defendant knowingly and intelligently waived his constitutional right to remain silent. <u>Miranda v. Arizona</u>,

384 U.S. 436, 455 (1966).

With respect to the March 28 statement to BSO, Detective Ilarraza's testimony proved that the statement was freely and voluntarily given after Miranda warnings were read and waived. Although Defendant requests the Court to infer that there was some type of coercion by Detective Thomasevich which resulted in Defendant changing his story for the third time, there was no evidence to that effect, and the Court makes no such inference. Indeed, Defendant's attorney, Mr. Velazquez, testified that Defendant gave him several versions of the story. There was also evidence of intercepted telephone conversations between Defendant and Co-Defendant Massaro in which Defendant referred to different "versions" of the murder.

There was no evidence of any promises made to Defendant by BSO. Although Mr. Velazquez testified that Defendant had told him that the BSO Detectives had promised him a manslaughter charge, Mr. Velazquez advised Defendant after the statement that no promises had been made for his cooperation. Accordingly, there are no grounds for suppression of that statement.

With respect to the March 28 statement to the FBI, Special Agent Grover testified that Defendant confirmed that he wished to waive his rights and continue his cooperation. Although the evidence clearly suggests that Defendant was hoping to obtain some type of benefit by his cooperation, the evidence is also uncontroverted by both the agents and Defendant's counsel that no actual promises were made to him. Defendant gave his subsequent statement on April 8 with knowledge of this fact.

The only additional issue which needs to be addressed with respect to the April 8 statement is the evidence, viewed in the light most favorable to Defendant, that Defendant's counsel was arguably denied the opportunity to end the interview on two occasions. The Court in United States v. Wallace, 838 F. Supp. 1301, 1303-04 (C.D. Ill. 1993) noted:

> In *Moran v. Burbine*, 475 U.S. 412, 418, 106 S. Ct. 1135, 1139, 89 L.Ed.2d 410 (1985), the Supreme Court held that the Fifth Amendment belongs to the defendant, not the defendant's attorney. This means that the Fifth Amendment does not require the police to mold their conduct to a specific code of behavior wholly unconnected to a defendant's personal assertion of his/her Fifth Amendment right. *Id.* at 424-25, 106 S. Ct. at 1142-43. Rather, the police may proceed with questioning until the defendant personally asserts the right to remain silent or asks for an attorney. *Miranda*, 384 U.S. at 444-45, 86 S. Ct. at 1612-13. However, once these rights are asserted, all questioning must cease. *Id.*

There was no evidence that Defendant himself requested to end the interview or consult with counsel. Accordingly, there are no grounds for suppression of the April 8 statement.

### Recommendation

Accordingly, this Court respectfully recommends that the Motion to Suppress Statements be **DENIED**.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Paul C. Huck, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** this 25th day of October, 2001 at Miami, Florida.

STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE

cc: Honorable Paul C. Huck
counsel on attached list

Lawrence D. LaVecchio, Esq. (AUSA)
Richard Houlihan, Esq.
Samuel Deluca, Esq.
Jeffrey Weinkle, Esq.
Donald Spadero, Esq.
Michael Smith, Esq.
Fred Haddad, Esq.
Albert Levin, Esq.
Thomas Almon, Esq.
Manuel Gonzalez, Esq.
William D. Matthewman, Esq.
Christopher A. Grillo, Esq.