UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6273-CR-HUCK

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

ARIEL HERNANDEZ, et al.,

    *Defendant,*

_____/

**DEFENDANT, ARIEL HERNANDEZ'S OBJECTIONS
TO PRE-SENTENCE INVESTIGATION REPORT**

THE DEFENDANT, ARIEL HERNANDEZ, by and through the undersigned counsel, respectfully files the following objections to the Pre-Sentence Investigation Report:

As a predicate to the Offense Conduct objections, the defendant submits that this is not an exhaustive listing and recognizes that many of his objections are simply denials of arguments previously made by the government and that several objections may be contrary to the findings of the jury.

**The Offense Conduct:**

1. *Paragraph 22:* This paragraph indicates that "The [check] scheme commenced during the Spring of 1997 and lasted until September 19, 2000." The defendant maintains that he did not meet Defendant Massaro until June, 1998. Therefore did not and could not have conspired with Massaro to use counterfeit checks or unlawfully purchase goods. The defendant further states that any counterfeit checks that he may have created or utilized prior to June 1998 were not for the benefit of any person or enterprise other than himself. Further, Hernandez and Massaro only engaged in business activities utilizing checks of any type between January and March of 1999.

*United States v. Ariel Hernandez*
CASE NO. 00-6273-CR-HUCK

2. *Paragraph 25:* The defendant acknowledges the jury finding that the government presented evidence in the form of cashier testimony that Ms. Smith was present at a time that Mr. Hernandez allegedly attempted to make a return and that Ms. Smith allegedly made a purchase. However, Mr. Hernandez disputes this evidence.

Mr. Hernandez further recognizes that the jury has made the factual determination that he is guilty of the murder of Ms. Smith. However, Mr. Hernandez, disputes that the government presented any evidence of "A cooperating witness' " account is that Ms. Smith was mistakenly believed to be cooperating with law enforcement against members of the Gambino Crime Family." Throughout pre-trial proceedings, the government attorneys often referred to a cooperating witness who gave this information. Nevertheless, based upon the best recollection of the defendant and the undersigned, the government's evidence at trial consisted of the so called "anonymous telephone call" that Det. Illaraza testified was made by Mr. Hernandez.[1]

Furthermore, although the government's medical examiner testified that the injuries were consistent with rectal insertion of a wine bottle, the only mention of this event came in the form of the "anonymous telephone call" referred to above.

3. *Paragraph 30:* The defendant objects to this paragraph to the extent that it alleges that "On march 22, 1999, Francisco Valdes told Silverman that Ms. Smith was murdered because orders came down from organized crime family members for "the north." Candidly, neither the defendant nor the undersigned recall this testimony and object herein merely to preserve the issue.

---

[1] Det. Illaraza testified that he recognized Mr. Hernandez's voice and that Mr. Hernandez admitted making the "anonymous call."

2

<u>United States v. Ariel Hernandez</u>
*CASE NO. 00-6273-CR-HUCK*

4. *Paragraph 33:* The defendant objects to this paragraph to the extent that it alleges that "The admissions [made on the telephone to Massaro] substantiated law enforcement's position that Ms. Smith's death was planned and not accidental, and that Massaro ordered Hernandez to commit the murder." This is and was the government's argument, however, the defendant disputes the conclusion drawn from the subject calls.

5. *Paragraph 36:* The defendant objects to this paragraph to the extent that it alleges that it alleges that Massaro directed Ariel Hernandez to murder Jeanettes Smith.

6. *Paragraph 33:* The defendant objects to this paragraph to the extent that it alleges that it alleges that he either entered into the counterfeit check/bank fraud scheme or murdered Jeanette Smith at the request of Massaro. These statements are not accurate.

**Adjustment for Obstruction of Justice:**

7. Paragraph 41: Section 3C1.1 governs enhancements for obstruction of justice and states:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice *during the course of* the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense by 2 levels.

Emphasis added.

It is respectfully submitted that the disposal of the body was merely a continuation of the underlying alleged murder and not a separate and distinct act intended to obstruct justice. That a sentence should not be enhanced for obstruction of justice where the conduct alleged is merely a part of the underlying offense of conviction was recognized in *United States v. Amsden*, 213 F.3d 1014,

3

<u>United States v. Ariel Hernandez</u>
*CASE NO. 00-6273-CR-HUCK*

(8th Cir. 2000). In *Amsden,* the defendant entered a plea of guilty to two counts of mailing threatening communications. Following his change of plea, the defendant mailed a letter threatening to sexually assault the recipient's daughter upon his release from prison. Although the Court ruled that this threat may not have been an attempt to dissuade the recipient from testifying at sentencing, the Court clearly indicated that the act of mailing the letter was merely a continuation of the underlying offense conduct for which the defendant had been convicted and therefore not a proper basis for this enhancement.

In the instant matter, the disposal of Ms. Smith's body is also a mere continuation of the underlying offense conduct for which the defendant has been convicted.

The defendant further submits that under the facts of this case, imposition of a 2 level enhancement for obstruction of justice constitutes a double counting of the underlying offense conduct.

> "Double counting occurs when 'one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by [the] application of another part of the Guidelines.'" *United States v. Hipenbecker,* 115 F.3d 581, 583 (8th Cir.1997), quoting *United States v. Reese,* 2 F.3d 870, 895 (9th Cir.1993), *cert. denied,* 510 U.S. 1094, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994).

See, *Amsden* at 1016.

**Mental and Emotional Health:**

8. *Paragraph 120:* The defendant submits that this paragraph is perhaps literally correct wherein it indicates that the "... Chief Psychologist saw the defendant on at least 24 occasions between October 2000 and january 29, 2002." The defendant states that the psychologist may have

walked past his cell and observed him on those occasions. However, he was only examined by a psychologist from FDC on 2 occasions, each of which occurred after trial. The first of these occurred in the first part of March, 2002 and the second on or about December 16, 2002. As a result of these examinations, the defendant was prescribed Doxepin to treat his depression.

9. *Paragraph 121 and 130:* The defendant maintains that he did in fact serve in the U.S. Marine Corps. on two separate occasions. He was first discharged in November, 1989 and after re-enlisting, was again discharged in 1991. Paragraph 130 indicates that the defendant completed four months of boot camp in Beirut. This is incorrect. He received his basic training (boot camp) at Paris Island, South Carolina. Beirut was his first duty assignment after completing basic training.

The defendant's military service after 1987 was classified and involved various top secret operations on behalf of the United States Government in his capacity as a military sniper. He served in at least eight different countries on at least three continents.[2]

**Military Service:**

See paragraph nine above.

**Employment Record:**

10. *Paragraph 141:* As an assistant manager at a gym, the defendant's salary was $425 per week plus commissions and fees earned as a personal trainer.

---

[2] The defendant will elaborate on these activities at the request of the Court, but feels that this should be done in a closed session.

<u>United States v. Ariel Hernandez</u>
CASE NO. 00-6273-CR-HUCK

**Statutory Provisions:**

11. *Paragraph 149:* The PSI indicates that the term of imprisonment is life imprisonment pursuant to 18 U.S.C. Sec. 1963(a). This statute provides for a sentence of life imprisonment when the "... violation is based on racketeering activity for which the maximum penalty includes life imprisonment." Therefore, the provisions of 18 U.S.C. Sec. 1959(a)(1) (hereafter VICAR) must be examined to determine whether the maximum penalty may include life imprisonment. In reviewing the VICAR statute we see that there are no less than six violent offenses for which a defendant could be convicted of a VICAR violation. Depending upon the specific offense which constitutes the VICAR violation the penalties can range from three years to life imprisonment. In completing the verdict form the jury was neither requested to nor otherwise indicated the specific underlying offense which constituted the VICAR offense.[3]

It is respectfully submitted that pursuant to *Apprendi, v. New Jersey,* 120 S. Ct. 2348 (U.S. June 26, 2000), absent a specific jury finding that the VICAR was predicated upon murder, the Court cannot sentence the defendant to more than three years imprisonment for VICAR and further that the sentence for Count One (RICO Conspiracy) cannot be increased beyond the statutory maximum of 20 years.

---

[3] Admittedly, in Count One the jury found the defendant guilty of murder under Florida Law. However, the VICAR violation is a separate and distinct offense and is charged in a separate Count.

<u>United States v. Ariel Hernandez</u>
*CASE NO. 00-6273-CR-HUCK*

WHEREFORE, predicated upon the foregoing, the Defendant respectfully moves this Honorable Court to enter its Order sustaining his objections.

Respectfully submitted,

JEFFREY D. WEINKLE, ESQ.
FBN: 271934

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed/delivered this \_\_19th\_\_ day of \_\_April\_\_, 2002, to: UNITED STATES ATTORNEY'S OFFICE, **AUSA Lawrence Lavecchio**, 500 E. Broward Blvd., Suite 700, Ft. Lauderdale, FL 33394 (Fax: 954-356-7230); and to **Thomas Felasco**, U.S. Probation Officer, 300 N.E. 1st Avenue, Room 315, Miami, FL 33132-2126, (Fax: 305-523-5496).

JEFFREY D. WEINKLE, ESQ.
1035 NW 11th Avenue
Miami, FL 33136-2911
Tel: 305-373-4445
Fax: 305-545-8514

JEFFREY D. WEINKLE