# 06-60029
Page 2

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY** CIV - HUCK

| United States District Court | District | Florida | |
|---|---|---|---|
| **Name** (under which you were convicted):<br>Ariel A. Hernandez | | Docket or Case No.:<br>00-6273 CR Huck | MAGISTRATE JUDGE<br>WHITE |
| Place of Confinement:<br>Turner Gilford Knight Center | | Prisoner No.:<br>040061011 | |
| UNITED STATES OF AMERICA<br><br>v. | | Movant (include name under which you were convicted)<br><br>Ariel A. Hernandez | |

## MOTION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging: _____
    United States District Court, Southern Florida District,
    Miami Division
    _____

    (b) Criminal docket or case number (if you know): __00-6273-CR-HUCK__

2.  (a) Date of the judgment of conviction (if you know): __December, 2001__
    _____

    (b) Date of sentencing: __July, 2002__

3.  Length of sentence: __Life__

4.  Nature of crime (all counts): __Count 1-Conspiracy to violate the__
    racketeering influenced and corrupt organization act
    Count 2 thru 16-Bank Fraud Count 17-Conspiracy to commit
    murder in aid of racketeering Count 18- Murder in aid of
    racketeering Count 21-Possession of counterfeit securities
    _____

5.  (a) What was your plea? (Check one)

    (1)  Not guilty ☒        (2)  Guilty ☐        (3)  Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count
    or indictment, what did you plead guilty to and what did you plead not guilty to? _____
    _____
    _____
    _____
    _____

6.  If you went to trial, what kind of trial did you have? (Check one)    Jury ☒    Judge only ☐



Page 3

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ❑     No ☒

8. Did you appeal from the judgment of conviction?     Yes ☒     No ❑

9. If you did appeal, answer the following:

   (a) Name of court: 11th Circuit Court of Appeals

   (b) Docket or case number (if you know): 02-12352

   (c) Result: Appeal Denied

   (d) Date of result (if you know): June, 2004

   (e) Citation to the case (if you know): _____

   (f) Grounds raised: 1. District Court erred by failing to have key portions of the trial transcribed, 2. District Court failed to sever defendants. District Court failed to suppress Ariel Hernandez's statements. 3. District Court abused its discretion by allowing evidence in violation of rules. 4. There are many more grounds, but I have no memory of what they were.

   (g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☒  No ❑

      If "Yes," answer the following:

      (1) Docket or case number (if you know): 04-7614

      (2) Result: Denied

      (3) Date of result (if you know): January 10, 2005

      (4) Citation to the case (if you know): _____

      (5) Grounds raised: Same grounds as the Direct Appeal, plus the other I can't remember because the facility of incarceration has lost or misplaced much of the petitioners legal documents. I apologize that I could not be more specific, due to no fault of mine.

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

      Yes ❑   No ☒

11. If your answer to Question 10 was "Yes," give the following information:

   (a) (1) Name of court: _____

      (2) Docket or case number (if you know): _____

      (3) Date of filing (if you know): _____

    (4) Nature of the proceeding: _____

    (5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

    (6) Did you receive a hearing where evidence was given on your motion, petition, or

application?    Yes ❑  No ☒

    (7) Result: _____

    (8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

    (1) Name of court: _____

    (2) Docket or case number (if you know): _____

    (3) Date of filing (if you know): _____

    (4) Nature of the proceeding: _____

    (5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

    (6) Did you receive a hearing where evidence was given on your motion, petition, or

application?    Yes ❑  No ☒

    (7) Result: _____

    (8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your

motion, petition, or application?

    (1) First petition:    Yes ❑  No ❑

    (2) Second petition:  Yes ❑  No ❑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: _____

_____

_____

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

GROUND ONE: ___ Arrest not legal based on facts that trial counsel failed and or ignored to divulge in court

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
1. Arrest was conducted in March 28, 1999 by Broward Sheriffs Office and Sunny Isles Police Department at the Defendant's girlfriend's apartment. Entry was gained because B.S.O.'s Detective Frank Illaraza statements, in which he claimed that prior to entry and arrest that the F.B.I. informed him that I had specifically obtained a fake driver's license under the name of Richard Martinez (the F.B.I. agent was Howie Groover). Detective Illaraza claimed this was all the information he needed for a arrest and that the victim's boyfriend, Jason Rodriguez also told him that his girlfriend, Jeanette Smith had left with a man named Ariel Martinez. (Cont'd on attached page)

(b) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❏    No ☒

(2) If you did not raise this issue in your direct appeal, explain why: _Appellant_ _counsel did not want to raise these issues_ _____

_____

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❏    No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Ground One Continued.

Det. Illaraza also states he obtained a arrest warrant for Ariel Hernandez charging him with murder a day prior to the arrest. Here are the Discrepancies:

1. Jason Rodriquez never made any statements saying his girlfriend left with a man named Ariel Martinez to any B.S.O. detectives

2. F.B.I. Agent Groover never told any detective in B.S.O. That the F.B.I. had obtain information about defendant obtaining a fake drivers license and neither did agent Fiesthammel. F.B.I. 302 reports make no such claims, instead agent Groover stated on his 302 report based on the arrest interview, that I had informed him and agent Fiesthammel that I had a fake drivers license under the name of "Richard Martinez." Agent Groover on his deposition testified that the F.B.I. did not know about the fake license until I told them after my arrest, Agent Groover further testified at the deposition that I even told him where to find the license, and that the information I provided was truthful, he even stated I gave him the combination to my brief cases locks.

3. F.B.I's surveillance team never reported that this defendant got a fake drivers license. At trial they testified that they never saw me enter a Driver's License Bureau at any location.

4. Sunny Isles Police testified on depositions that the warrant was for questioning not murder. They also testified that B.S.O. entered the apartment first, and B.S.O. supervisor Eli Thomasevich testified that Det. Illaraza told him that he was first to enter contrary to what Det. Illara stated that it was Sunny Isles who gained entry.

5. Defendant has video tape evidence, that shows entering first is Det. Illariza who then grabbed my girlfriend Tammy and throwing her aside, contrary to Det. Illarazas' testimonies at deposition, motion to suppenss and trail

6. Dectective Illaraza lied on his investigative report when he states he told Sunny Isles Police that he knew of my alias to be "Richard Martinez." How can this be true when there is no documented evidence of him knowing of a alias and agent Groover testified that the F.B.I. did not know until after the arrest in which I provided the evidence. So how did Det. Illaraza know before anyone?

7. Sunny Isle Lt. Fiesthammel, B.S.O. Det. Illaraza, Thomasevich, Devine, Kallman, along with agent Fiesthammel have given false testimony on my arrest and depositions and other matters.

8. F.B.I. Agent Groover did testify that they had asked B.S.O. to arrest me because Mr. Massaro had put a hit on me, contrary to Illarazas' testimony or report. Any competent prosecutor can see that the evidence was at the least circumstantial and that an arrest for murder would not hold up. And if Illaraza did have a warrant for murder why wasn't I taken immediately to jail so that I could be arraigned? Why was I forced to spend 12 hours in a small room with no access to my attorney? I did tell B.S.O. detectives that I wanted an attorney, and was refused the use of a phone to contact him, and I was not handcuffed nor Mirandized.

9. The only evidence B.S.O. had was a taped conversation in which I claim to have a "package to get rid of." Had the F.B.I. been truthful and heard the conversations prior to the arrest, before an after that specific call they could see that the package was in fact counterfeit checks unlike the prosecutors at trial wanted the jury to believe the package was the body of the victim.

10. Evidence collected at the arrest site cannot be used since the address that I and my girlfriend consented to the search was not the place of arrest but another apartment across the street, therefore evidence collected by B.S.O. and the F.B.I. should have never been allowed because it was collected illegally.

11. If Det. Illaraza did have a factual warrant for murder why was I not handcuffed? Why wasn't I informed of my rights at the arrest site? Why did he ask if I would voluntarily come with him? This was done to provide a false sense that I could refuse his request and that I was not under arrest. Never in the history of B.S.O. has a murder suspect been transported to Broward without being handcuffed or handcuffed at the arrest site unless Illaraza wanted to create a false environment that I was not under arrest. At the arrest site I asked Illaraza to allow me to call my attorney. He told me that it wasn't necessary because he only wanted to ask me some questions. When I grabbed the phone to call my attorney he took the phone away and ask Det. Devine to take me to the car.

12. At the police station for B.S.O. I was led to believe I was being questioned about fake checks, since I use a majority of checks in Broward County, not for murder. After many hours Detective Thomasevich entered the interview room alone. He then used verbal threats trying to get me to admit to a murder I did not commit. Det. Thomasevich sat across me crossed his legs and pulled a Smith and Wesson 38 special in stainless steel finish, with a hammer less snub revolver and pointed at my chest and said Quote "I can shot you right now and say you attacked me, and tried to escape. I was in fear, Det. Thomasevich then instructed me as to what to say on tape. He also told me not to worry, because the victim was quote "a whore" and "women who work the strip clubs are drug addicts," Hookers and "very promiscuous" and if I said she died during rough sex I would get off with a manslaughter and do only 2 to 5 years because I have no violent past. I told my Attorney what occurred after I was allowed the use of a phone in jail. Later at a deposition Det. Eli Thomasevich testified that he had a 38 Smith and Wesson stainless steel snub revolver. My attorney asked him if he carried this gun in open view such as a hip or shoulder holster. He replied no, he carried it on an ankle holster away from open view. If I am lying how then was I able to describe the gun down to every detail, if it wasn't pointed at my chest? He had to withdraw his gun at some point correct?

13. During the interview at the B.S.O. station Det. Illaraza testified that he confronted me with Tammy's taped statement in which he alleged that Tammy Bubble said I killed the victim. This is collaborated by Det. Devines' and Det. Kallman, and Det. Thomasevich depositions and testimonies. This is not true. How could Illara, Devine, Kallman, and Thomasevich say this when in fact Tammy's tape statement was taken hours after I was forced to make a false confession, not before. Clearly there is a cover up of some kind occurring.

14. After B.S.O. forced me to make a false confession F.B.I. agents Fiesthammel and Groover proceeded to interview me. The first thing I told them was Quote "The confession I gave to B.S.O. was a lie its not the truth" also F.B.I. never advised me of my rights nor did I ever sign a Rights Waiver form for on in the presence of the F.B.I. agent.

15. If Illaraza had my alleged alias provided to him why wasn't it included in the arrest affidavit? Answer is he did not know my alias and to say otherwise is a lie.

16. My attorney Jeffrey Weinkle never brought these issues up on trial and continually went against my decision and sabotaged my defense.

17. Trial counsel had enough evidence to show numerous flaws with Illarazas police report. Trial counsel never raised theses issues also numerous flaws with other officers statements to vast to list was not made available to the jury and had they known a different verdict would have been reached. Therefore a acquittal or a new trial should be granted.

Page 6

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑    No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑    No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑    No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: Counsel appointed for Appeal, told this Defendant that he could only appeal issues that were objected to at trial. Also counsel did not want to raise these issues.

_____

_____

GROUND TWO: Profer Letter/Use immunity, and right to cancel violations

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): On my second interview by F.B.I. (April 1999) with U.S. Assistant Attorney Jeffrey Sloman and my attorneys struck a agreement in which I was to be given U.S.E. immunity if I cooperated. I agreed. F.B.I. then conducted a second interview in which I was specifically gave information on how the counterfeit check scheme was operated, what computers were used and what programs were used in the computer. During the interview F.B.I. Agents Fiesthammel and Groover stared to ask about the

(Cont'd on attached pages)

Ground Two Cont'd

the murder at B.S.O.'s request, this line of questioning had nothing to do with the use immunity/ proffer Letter Deal struck by my attorney and a U.S.A. Jeffrey Sloman. I asked to speak to my attorney. Agent Fiesthammel said it wasn't necessary, I again asked to speak to my attorney, only then did agent Fiesthammel leave the interview room to look for my attorney, after a few minutes he returned and told me he could not find my attorney. The agents then started asking about the check scheme, about a hour later, again the agents asked about the murder. I again told the agents that I wanted to speak to my attorneys. Agent Fiesthammel left for 20 minutes. He came back and told me he again could not find my attorney. The agents then again began asking about my check scheme, 1 hour later they started again to ask about the murder I then told the agents that I have had enough of them asking about the murder. I then told I would not speak to them unless they immediately get my attorney, at that time agent Fiesthammel got a cell phone call from Groover started to ask about the murder at B.S.O.'s request. This had nothing to do with the use of immunity/proffer letter deal struck by my attorney and A U.S.A. Jeffrey Sloman. I asked to speak to my attorney. Agent Fiest Hammel said it wasn't necessary, I again asked to speak to my attorney only then did agent Fiest Hammel leave the interview room to look for my attorney. After a few minutes he returned and told me he could not find my attorney. The agents then started asking about the check scheme. About an hour later, again, the agents asked me about the murder. I again told the agents that I wanted to speak to my attorney. Agent Fiest Hammel left for 20 minutes. He came back and told me, he again could not find my attorney. The agents, then again, began asking about my check scheme. 1 hour later, they started again to ask about the murder. I then told the agents have had enough of them asking about the murder. I then told them I will not speak to them unless they immediately get my attorney. I also told them I needed to speak to my attorney, at that time Agent Fiest Hammel got a cell phone call from wife in which they got into an argument. Agent Fiest Hammel left the room, 20 minutes later he came in and for the third time told me that he could not find my attorney. He then told Agent Groover that he had enough and left.

When I later spoke to my attorney at the jail, I asked him where was he and that on three occasions I asked Agent Fiest Hammel to get him and he told me he could not find you. My attorney responded by saying that Agent Fiest Hammel lied to me. My attorney said that the first time Agent Fiest Hammel came out he saw him and asked Agent Fiest Hammel if he could see me and if I needed anything. Agent Fiest Hammel responded by saying that it wasn't necessary, that everything was OK. The second time my attorney saw Fiest Hammel he again asked to see me. Agent Fiest Hammel told him again it wasn't necessary that everything was OK. My attorney then told Agent Fiest Hammel he wanted my confirmation that all was OK. Agent Fiest Hammel again said it wasn't necessary because they were just finishing up. The third time my attorney say Fiest Hammel he told him he wanted the interview to stop until he had spoken to me directly, that it was too late that I had already been taken back to jail. Bottom line is Agent Fiest Hammel lied to me and my attorney, and my right to counsel was violated. As well as violating the use immunity deal by continually asking about the murder and not the check scheme.

Plus the information given to the F.B.I. and U.S assistant Attorney Jeffrey Sloman as part of the use immunity ended up being used against me on counts 2-16 and count 21 which violates the term of use immunity, and I had not given this information. The government (FBI and Sloman)

would never have found out about the check scheme contrary to their press release that they had stumbled into an elaborate check scheme. No investigation was ever conducted on the check scheme until I provided the information that the FBI needed as part of the use immunity deal. Further more FBI's 302's will show no investigation on any check scheme was conducted prior to my help. Thus, I should have never been charged at all with the bank fraud check scheme information I provided on the use immunity deal. The government violated the terms of the Proffer letter. Trial counsel was aware of these issues. I continually asked him to raise these issues and trial counsel ignored my pleas which almost escalated into a physical confrontation. Even at trial, counsel refused to raise these issues and the prosecutors were aware of these violations yet they proceeded with trial. An acquittal or a new trial should be granted.

Agent Fiest Hammel informed this defendant and asked him to maintain relations with Massaro and to put him at ease. To do this the FBI Agent Fiest Hammel asked this defendant to call Massaro and speak to him. Defendant informed Fiest Hammel that he was saving Massaros letters and receipts for monies that was put into his account. Massaro not only put monies into my account but gave monies to Tammy Bubble defendants girlfriend. Massaro did this to buy defendants silence. Because defendant had knowledge of two prior murders that Massaro and Valdez and others committed. Namely John Pocarro and Mr. Napoltano whose legs washed up on the beach. Defendant told F.B.I. agent Fiest Hammel. Attorneys for defendant informed the F.B.I. and prosecutors Sloman and Lcucchio and they responded that they didn't care and if Massaro was involved even less because Massaro was under arrest. This was brought up to the F.B.I. and prosecutors before trial.

Since violations of the use immunity occurred and rights to counsel as well were violated, this warrants an acquittal or a new trial excluding evidence obtained in the use immunity agreement.

_____

_____

**(b) Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ☒

    (2) If you did not raise this issue in your direct appeal, explain why: ___Appellant___

counsel did not want to raise these issues. _____

_____

**(c) Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑   No ☒

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑   No ☒

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑   No ☒

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑   No ☒

    (6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue: _Counsel appointed for appeal, told this defendant_
_that he could only appeal issues that were objected to at_
_trial. Also he did not want to raise these issues._

**GROUND THREE:** _Evidence used at trial was illegally obtained_
_and evidence at scene and elsewhere was never tested or_
_improperly tested or used._
(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_1. Evidence used at trial such as wiretaps were illegally_
_obtained in which violated the terms of the warrant to record_
_phone calls. The warrent specifically explained that calls_
_between spouse, clergy or counsel could not be recorded. This_
_defendant's confidential calls to his attorney were not only_
_recorded but transcribed and used at trial with the Prose-_
_cutors knowledge these calls were in fact illegally obtained_
_and the court allowed the Prosecutions to use and play_
_(cont'd on next page)_

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑    No ☒

(2) If you did not raise this issue in your direct appeal, explain why: _Appellant_
_counsel did not want to raise these issues._

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑    No ❑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Ground Three Cont'd

these calls to the jury. There never was a waiver either on my part or my attorney's part, that
allowed these calls to be used. Clearly these actions by the FBI and the U.S. Attorney violated
this defendants rights to counsel and confidentiality between counsel and defendant.

Evidence was illegally obtained and used by B.S.O. Detective Illaraza. Detective Illaraza claims
he found a receipt from the Sharper Image store on top of the cabinets inside the Olympia hotel
room. The problem is crimes scene detective thoroughly inspected the area of the cabinets and
spotted no receipts on top of the cabinets. A housekeeper by the name of Betty Hicks stated that
"she saw Detective Illaraza going through a garbage can directly outside the hotel room".Ms.
Hicks stated she "saw Detective Illaraza pull out some crumbled paper, opened it and went inside
the hotel room". She states she saw Detective Illaraza grab a chair and place it by the cabinets
and was fumbling either with the lights or something near the lights on top of the cabinets. While
this was occurring, the crime scene Detective was in the bathroom processing for fingerprints
and was not aware of what Detective Illaraza was doing or where he was. Trial counsel failed to
take a tape statement of Ms. Hicks and failed to investigate Ms. Hicks allegations as to what she
saw and counsel failed to call her to trial for testimony.

3. At the scene were the body of Jeanette Smith was found. Both the M.E. and homicide
detectives found a hair on the victims stomach. This hair was never entered to be tested for
DNA upon further research this hair was not in any properly receipt or sent to any lab. Also at
the hotel scene there was semen and other DNA with female traits found, yet they never matched
this foreign DNA to the defendant or victim or any other person such as Adam Silverman. The
jury was denied this information by trial counsel and the prosecutors, and such evidence would
have casted a shadow of doubt.

4. The DNA that was collected was tested at a facility that had not yet received it states
certification also the DNA test used was faulted, since this incident B.S.O. lab has gone thru 3
different DNA tests 2 which were found faulted in which convictions were overturned. Also trial
counsel refused to ask for DNA samples to be independently tested to see if the uncertified
B.S.O. lab was conclusive. Counsel against this defendants urgent pleas did not submit motions
to the court asking for funds to conduct a independent test with a certified lab. Also DNA
evidence collected from this defendant was in violation of the Frye test. The DNA samples were
collected in a contaminated environment. Also strong questions and doubts were raised by this
defendant and counsel of trial. Example: victim did give this defendant oral sex in the parking lot
of the strip club where victim worked, afterwards defendant and victim went to a 24 hour
Foodmart Gas Station in which both parties drank wine coolers. Afterwards both parties had
breakfast at a Denny's and afterwards went to a hotel room in which the victim had a Pepsi.
Later victim was placed in the water inside a box by defendant Masarro and defendant Dominick
Marcheese. Victim was under water for about 14 hours in a polluted canal. When victim was
found she had her mouth open. So how could DNA (sperm) by found in the mouth when A)
Victim drank alcohol after oral sex. B) Ate breakfast and drank hot coffee and C) Had a Pepsi,
and D) was under polluted canal water for 14 hours. Surely something is very suspicious about
this DNA allegedly found in the victim's mouth.

5. Testimonial evidence was illegally obtained by the F.B.I. Example: F.B.I. knowing they had no case unless some testified, they hatched up a scheme which involved F.B.I. informant Peter Russonicholas A.K.A. Pete the Great. F.B.I. asked Peter Russonicholas to get Francisco Valdez to come with him to pickup two kilos of cocaine at a designated F.B.I. location. The problem was that Francisco Valdez was told by Mr. Russo Nicholas that they were going to pick up money not cocaine, at no point was there any real cocaine being used for this F.B.I. scheme. This illegal scheme by the F.B.I. to entrap Mr. Valdez to testify was illegal because in was done deceitfully to get Mr. Valdez to testify against Mr. Massaro and myself. Throughout this case F.B.I. agents acted as loose canons. They violated phone tap orders and secured informants testimonies using deceitful schemes. Trial counsel failed to raise these issues.

6. A bogus third party hearsay statement was allowed into evidence by the court. The statement was of Joseph Maffei which was used to collaborate Adam Silvermans statement that the death of Jeanette Smith was a mob hit. Joseph Maffei's own mother made a statement that her son's statements were false and had no merit. Mr. Maffeis' statements was not based on his own factual knowledge but rather hearsay such as someone told him who told him and so on and so on. All this with no factual knowledge of anything about a mob hit. The F.B.I.'s own inside snitch Mr. Russonicholas had a closer relationship with Massaro than Mr. Maffei and in recorded phone calls the so called snitch, and mobster all stated this must be a accident not a mob hit as prosecutors wanted the jury to believe further more the court knew it was a third party hearsay and allowed into evidence when defense counsel asked where Mr. Maffei prosecutor Slooman, and F.B.I. agent Groover said they didn't know. Mr. Maffei was not available for cross examination, and this defendants counsel was more interested in playing with his computer then bringing this issue up in court. Third party hearsay statement should have not been allowed into evidence and the only two people who claim this was a mob hit wan the liar Mr. Maffei who's own mother stated her son was lying, and Adam Silverman who is a drug addict who could be persuaded to sell his soul. Mr. Maffeis' statement says he heard from someone this was a mob hit. He had no actual knowledge and thus his statement should have been excluded and the court should have never let the prosecutors use it at trial or given it to the jury. Just like this defendants privilege attorney illegally recorded conversations by F.B.I.

7. F.B.I. never obtained a consent to search the apartment shared by me and Ms. Bubbel all evidence collected cannot be used because it was illegally obtained. Also there were many items taken that were never written down on any property receipts, or inventoried. Where did they go? Where are they? Who has them?

8. Prosecutors claimed victim was drugged with GHB. The only problem with GHB is a orally taken drug on the lab results there was no GHB found in the stomach, liver or kidneys, nor brain. Any drug taken orally will leave residue in the stomach, liver and kidneys in this case the results were negative. The only smallest trace was found in one of the 5 blood samples taken from the heart. GHB is naturally created in the heart when someone dies which explains why it is not founding the liver, stomach or kidneys if GHB was taken orally it would turn up in more organs. This evidence was purposely omitted and withheld. The jury never knew of this evidence.

9. Police planted evidence at the hotel scene as previously explained beside the Sharper Image receipts. Detectives Illaraza and other found DNA that matched me and the victim. This could

not be as government witness Tony Banks testified at trial, when he arrived at the hotel room at the Olympia Hotel the beds were stripped all the sheets, blankets, pillow cases, towels etc. were placed in a plastic garbage bag and thrown out. Police never found these items. So common sence will tell you that the hotel room service had to put new sheets, towels, blankets, and pillowcases, etc. on the beds, so how then is it possible B.S.O. police found DNA consistent with the victim and me on the items that were thrown out and never found by anyone and the hotel replaced with new ones? The Jury was denied this evidence because trail counsel never brought it into light and worse he knew such evidence collected by B.S.O. was very suspicious yet he never brought the issue up.

10. The testimony of Accacia Lopez was illegally coerce by F.B.I. agents and used at trial. Ms. Accacia Lopez was part of the check scheme. It was she who always authorized the bogus checks during purchases Office Depot survailance tapes would show 2 things 1.) Jeanette Smith was never with me and 2) Accacia Lopez is the only female with me, tapes would also show me paying her cash to all the checks to go thru. F.B.I. and prosecutors knew this, and coerced Ms. Lopez into making a false statement so it would assist in the mafia case they were trying to build. Ms. Bubbel was also coerced in providing a false statement when she refused F.B.I. followed her, and made there presence known as intimidation so she could provide false statement that would assist in Building a Malia case, the statements used as evidence were in fact illegally obtained and used at trial. An acquittal or a new trail is in order.

11. Telephone calls were illegally recorded and violated the courts order. Example the district court order wiretaps to be used to record all calls Massarc maybe with specific instructions not to record the following: 1. Conversations between spouses, 2. Conversations between clergy 3. Conversations between attorney and client. F.B.I. was instructed to stop recording when such conversations occurred. The F.B.I. never stopped these recordings thus violating the court order. Defendant points out A). His Attorney privileged calls were recorded. And B). F.B.I. agents are often encouraged to violate court issued wiretaps rules by their supervisors because at the very least they know those calls will be inadmissible in court and if suppression is the only sanction, the monitoring officer has nothing to lose by interception of privilege conversation especially when they identity of the callers is known, and because of this the officer in charge of monitoring these calls, privileged on not will be encouraged to listen rather than be deterred. Prosecutors know this well and they too violate the rules of wire interception. A actual on new trial without such evidence should be granted.

12. Prosecutor and agents and officers purposely distorted the truth in intercepted phone calls example the one call about "Things getting messy" and "a package to get rid of." Had the jury been allowed to hear the calls before the allege murder and after they could have seen that the term package referred to fake or counterfeit checks not a body as prosecutor led the jury to believe. I also point out that during the Broward trail in which I was illegally arrested and indicted, which was later dismissed. The U.S. Attorney's office under the Rules of Discovery was asked by the court to produce certain 302 reports. The U.S. attorneys office responded on record at the Broward proceeding that quote " it cannot give the 302's because if given the defendant would then give the 302's to his co-defendants on a pending Federal Appeals in which case it would jeopardize the governments conviction." Clearly the government is scared to provide theses 302's because if done convictions would be overturned. The question is what will

these 302's show that the government is so afraid of? Rights Violation? Fabricated evidence that government knowingly knew about, yet it used at trail to secure a conviction?, will it show lies that the government wants to cover up at any expense? What secrets does the government doesn't want the defendant, the court or the public to know about that would jeopardize the conviction? Since it is obvious evidence was withheld acquittal or a new trial is in order.

13. Photographic evidence used was misleading and coerced. Example: Photo line up used B.S.O. to ID defendant at the Sharper Image store. B.S.O. detectives asked the witnesses to specifically look at photograph number 2. Thus leading witnesses to think that this must be the person they are looking for. Also B.S.O. prepped the witness before the recorded photographic Identification occurred on tape, who knows what was said or done before?, also photograph used at trial to ID the victim was leading. Prosecutors never arranged a photo lineup as it did before or during trial for witnesses to ID the victim instead they sued one picture before and after trial. If one photo was used during the investigation and shown to witnesses to ID a murder victim, witnesses shown a stole picture would and can be led to believe this was the victim. Why didn't prosecutors arrange a photo line of women who looked similar to the victim as they did with others why?, is because prosecutor used the one picture to correct and prep the witnesses at trial. If the witness was so sure he or she world have been able to ID her from several pictures instead only one was used, and when witnesses took the stand they knew the photo shown was the victim, because prosecutors and police conditioned the witnesses into identifying the victim with the only one picture they had and used, Thus the witnesses accuracy, to ID the victim was faulted. Trail counsel knew this bout never raised the issue contrary to this defendants wishes.

14. Photos used to show the medical examiners autopsy to show injuries should have not been used because the sole purpose the prosecution used these photos was to horrify the crime and by ding this the jury will automatically look to the defendant as being quality. I point out not one juror was trained in the medical filed of pathology none was anyone of them a doctor. Therefore showing pictures to untrained persons accomplishes nothing. If the prosecutor was so hooked on showing injuries a "Grays Anatomy chart" could have been used to greater accuracy, instead prosecutors used pictures of dissection which showed nothing but blood and gore and was only used to "horrify the crime" in some instances pictures of injuries were shown after dissection, furthering enhancing the actual injuries. This is known as shock and awe. By subjecting the jury to these pictures that never really showed actual internal or external injuries. Therefore prosecutor A) never used actual evidence to ID specific injuries B) Such blood and gore pictures were illegally used for the purpose not to show injuries but to horrify the crime.

Page 9

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❏  No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❏  No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❏  No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: __Trial Counsel and Appellant refused to raise the issues I pointed out._____

_____

_____

_____

GROUND FOUR: __Medical Examiner testimony and evidence not conclusive and suspicious_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

  The Medical Examiner during testimony at trial could not say beyond reasonable doubt that the victim died because of a cricold cartilage fracture and evidence she provided was inconclusive to her theory of death. Further more, Trial Attorney and Appellant Attorney knew she was asked to leave the Broward M.E.'s office because she was false billing the County on the hours she spent doing autopsy for Broward County. Lisa Flanagan, the M.E. in question, was also having

Page 10

an affair with Homicide Det. Thomasevich, who in this motion
(Cont'd on next page)

**(b) Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑  No ☒

(2) If you did not raise this issue in your direct appeal, explain why: Trial Counsel
and Appellant Counsel refused to do so claiming it had no merit.
I strongly disagree.

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑  No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❑  No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❑  No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑  No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

Ground 4 Cont'd

Defendant can show his confession was coerced and that Thomasevich lied at depositions, and at other testimonies at trail and else where I again remind this count that Det. Illaraza and Thomasevich have been brought up on charges several times in Federal Court for 1.) Tampering with witness's evidence and 2) coercing false confessions. Det. Thomasevich and Det. Illara have also been investigated several times by B.S.O. Internal Affairs for allegations just mentioned. One detective was given the option to retire or face charges that was Det. Tomasevich who was having a affair with Lisa Flanagan the M.E. expert for the government who was asked to leave or face charges of misconduct like her boyfriend. Lover Det. Thomasevich. Prosecutors knew these witnesses were unreliable and where under investigation, prosecutors failed to mention this to all defense attorneys because if they knew. The Mob Hit/ murder case would be in jeopardy and have no merit. Therefore M.E. Lisa Flanagan's testimony should have never been allowed knowing about her official misconduct which would have casted doubt on anything she said and even more if her boyfriend/ lover Det. Thomasevich was forced to retire or face changes of official misconduct as his girlfriend did. The jury should have been alerted of these misconduct charges against the M.E. Surely this would have casted a huge shadow of doubt in the jury's mind. And because evidence was inconclusive the court should have not allowed it into evidence to be used at trial and witness's statements should have been suppressed.

Ground 5

Prosecutor belittle defense expert witness and gave jury information that was not based on facts of the case.

Direct Appeal of Ground Five

1. This issue was not raised on appeal
2. This issue was not raised on any post conviction motion
3. No hearings on Ground Five issue what so ever
4. Reasons Ground Five not Raised or appealed is counsel for appeal did not want to raise this issue. He said it had no merit.

Supporting Facts

At closing arguments prosecutor Sloman belittle Dr. Wright the defense M.E. Expert by making fun of his appearance and calling Dr. Wright a hired gun. Making him look like he was mob associated. The term hired gun was prejudicial because the Jury was led to believe that he was co called mob related, and he was hired to come up with a excuse and testimony to support defendants view on how the event happened, also said defendant ejaculated in the victims mouth after she was unconscious or dead. There was no such evidence or testimony provided to show or support Mr. Slomans' accusations or theory of events. He clearly injected this remark under the pretense to persuade the jury to convict, and to horrify the crime in the eyes and minds of the jury. Such outrageous fact less statements should have never been allowed. The court is a fault as well as my attorney for not stopping this even when at trial I raised this to my lawyer, who refused to raise this issue, because he was to busy playing with his computer and could not have been paying attention to what was being said. At the lease he should have objected or called a side bar, as well as the court should have intervene and stricken such unfounded statements that was based on opinion and not facts.

Ground Six

Jury instruction were confusing and some jurors were asleep during the proceedings.

Direct Appeal of Ground Six

1. This issue was not raised on appeal
2. This issue was not raised on any post conviction motion
3. No hearings no Ground 6 issue what so ever
4. Reasons for Ground 6 not Raised or Appealed is counsel for appeal did not want to raise this issue.

Supporting Facts

Jury instructions read.
Count 1- 18 USC 1962 (d) Rico Conspiracy

_____Guilty        _____ Not Guilty (needs check mark in guilty)

If you find defendant guilty of count 1 please answer the following question: Did you find that the defendant agreed to the commission of murder in violation of Section 782.04 Florida Statute?
_____Yes        _____ No (needs check in yes)

This question should have never been asked because it confused the jury to believe that the murder under Florida Statute 782.04 was part of the Rico case and not the Vicar Federal Statute Also because prosecutor played tapes that were so boring defendants and jurors were to the point of being put to sleep. Some were in face passed out. I alerted my attorney and he did nothing. Also Judge Huck forced Jurors to under go 8 to 10 hours of court proceedings with sometimes only a 15 or 30-minute lunch break. At many times Judge Huck seemed to rush to proceedings. Just like what he did at the evidentiary hearing where he wanted to reconstruct the records of trial in a few hours within a weeks time this case was almost 2 month long. This need to rush a trial resulted in many errors that were permitted by the court. And prosecutors played these lengthy tapes to bore the jury so that the only thing in their minds was the get this trial over with. Explaining a verdict being reached in 2 hours. Jurors never took notes asked questions. They wanted to get out of this boring lengthy trial at any cost even if it resulted in wrongful conviction of this defendant.

## Ground Seven

Trial counsel did not call defendant to the stand.  Especially when defendant instructed him to put him on the stand for trial.

### Direct Appeals of Ground Seven

1. This issue was not raised on appeal
2. This issue was not raised on any post conviction motion
3. No hearings on ground seven issues what so ever
4. Reasons Ground Seven was not Raised on Appeal is counsel for appeal did not want to raise this issue

### Supporting Facts

Before trial commenced defendant instructed trial counsel to must him on the stand so he could testify. Jury and defendant have a right to hear the truth and only by I testifying could some doubts have been put at ease.  Trial counsel refused to call me to the stand in broke into a verbal fight which at a later date almost escalated to a physical fight. Counsel ignored my instructions and acted without my authority.  Also against my defendants instructions Counsel did not put him on the stand during the motion suppress statements. Had counsel put me on the stand only I could have cleared or collaborated facts exposed by my original Attorney (Jerry Valasquez) in which he stated he asked the F.B.I. agent to let him see me, this occurred on 3 occasions at the same time I asked the F.B.I. to let me speak to my attorney had trial counsel put me on the stand this would have come to light, which was F.B.I. refused my request for counsel on 3 occasions, also had I had the opportunity to testify at the motion to suppress. The fact that Ilarraza and Thomasevich coerced and threaten me into a false confession would have been exposed. Trial counsel knew my testimony was true and collaborated by witnesses but he on his own choose to sabotage my case. Even the proceedings Judge stated that since I didn't testify he would have to put weight on the officer's testimony which resulted in a motion being denied.

Ground Eight

F.B.I. and Prosecutors fabricated evidence and did no investigation to support victims death was a mob hit on that victim was part of a check scheme. Evidence was held back.

Supporting Facts

F.B.I. non-investigators for the Prosecutors could prove victim was part of a check scheme. Nor was there a formal investigation conducted. Example: Det. Illara who was the only one who did any significant investigations testified at deposition that "his gut feeling was she even part of a check scheme". Detective Illara testified that he could not find any connection to me or the victim (Jeanette Smith) what-so-ever. He stated he went through phone records from victims house, cell phone, work and could not find any link to any of my phone numbers. Also victim's friends and family never heard of me or knew of me or saw me. Why is it that Prosecutors knew this information and never provided it to the Defendant or withheld it this information. Why didn't the F.B.I. check phone records? They did and found there was no connection to victim and defendant is this one of the many things that the Government is hiding in the 302's which they claim might jeopardize their case. What other information is purposely withheld. Could it be that the evidence was insufficient to establish Jeanette Smith was part of any check scheme? Detective Ilarraza They did and found out there was no connection to victim and defendant is one of the many things that the Government is hiding in the 302's which they claim might jeopardize their case. What other information is purposely withheld, could it be that the evidence was insufficient to establish that Jeanette Smith's death was meant to further the interests of "the Gambino Crime Family"? Or evidence was insufficient to establish Jeanette Smith was park of any check scheme. Det. Illaraza stated that there was no documented evidence that Smith participated in either buying or returning any items bought with counterfeit checks or that items bought with counterfeit checks or that she was a informant. FBI Agent later on a depo collaborated Detective Illaraza's findings. Will this evidence also show it to be insufficient to prove I had any ties to organized crime? Or that I made any tribute payments? Will it also show that I was never a part of any organized criminal enterprise? Such as Rico on that Jeanette Smith was killed because she was involved in an organized criminal enterprise or a check scheme? Not one shred of evidence was collaborated by Jeanette Smith's friends or family as to her being involved in illegal acts. The evidence shown and withheld is insufficient to support my conviction for Rico and murder under Rico. The court also is at fault for allowing evidence that appears to be insufficient to support a conviction especially when Det. Illaraza testified that his gut feeling was Jeanette Smith's death was a result of rough sex. A acquittal or new trial is warranted.

Direct Appeals of Ground Eight

1. This issue was not raised on Appeal
2. This issue was not raised on any post conviction motion
3. No hearing on Ground Eight issues what-so-ever
4. Reasons Ground Eight was not raised on Appeal is counsel for Appeal did not want to raise this issue.

## Ground Nine

The District Court erred by failing to have key controverted portions of the Trial transcribed and also portions of the evidentiary hearing on appeal transcribed as well.

## Supporting Facts

On and during trial key portion were not transcribed. The issue was raised on appeal which resulted in a evidentiary hearing. The goal to reconstruct the record. Judge Huck was rushing the reconstruction. Appellant Attorney advised me to sign a stipulation. I never intended to sign the stipulation but I did because I was pressured into it. I didn't want to do this. During this hearing Judge Huck made a prejudicial remark stating he didn't care what I wanted, that he was going to do this anyways. This was in reference to Judge Huck's reappointment of Mr. Weinkle as Co-Appellant Counsel. My Appellant Counsel and myself strongly objected to this, which brought the prejudicial statement mentioned above by Judge Huck. Judge Huck should have never appointed Weinkle because Judge Huck granted me Weinkle's motion to withdraw based on facts that 1.) Weinkle and I no longer had an Attorney/Client relationship. 2.) And that there were irreconcilable differences which resulted in verbal altercation. By Judge Hack knowing this and reappointing Weinkle he violated this Defendant's rights by reappointing Weinkle as co-Appellant Counsel. Also when I received the transcripts from the Hearing I found out the Court Reporter again failed to transcribe verbatim what was said at the evidentiary hearing. Such as my Attorney's objections and my own to Weinkle's appointment, neither objection was included in the transcripts. I assume it was purposely omitted by the court reporter upon reviewing the transcripts other parts were missing. Also on one occasion Judge Huck gives a statement of I remember that. He said this in support of the Prosecutor's Argument that itself should have been grounds for recusement of Judge Huck once he declared he was a witness at trial and supported the Prosecutor's argument at the evidentiary hearing. What are the odds of a court reporter twice failing to transcribe verbatim the hearing? I should have been given a new trial based on the court reporter's action and for not willingly signing the stipulation. A new trial is in order.

## District Appeal if Ground Nine

1. This issue was raised by myself. Counsel refused to raise this.
2. This issue was raised in a memorandum to Judge Huck, which was denied.
3. I appealed Judge Huck's decision to the Eleventh Circuit Court of Appeals and was told I could not raise this issue because I was represented by Counsel. Therefore because of this notice from the clerk and counsel's refusal to raise this issue, nothing occurred. This Defendant has lost the notice from the 11th District Court of Appeals, which motion was denied by I am represented by Counsel. However the clerk should have a copy on file.

Ground Ten

The District Court erred by not severing co-defendants.

Supporting Facts

The Court forced me to go to trial with a Defendant who plotted to have me killed. And I forced to go to trial with Co-Defendant Trentacosta who announced he was a captain in the Gambino Crime Family. By the Court not granting my motion for severance I was forced to go to trial with a man who was trying to kill me. How could I receive a fair trial? I looked guilty from the beginning because of mere association of being forced to go to trial with organized crime figures. If the jury saw me sitting at the same table with Mafia figures, the jury would naturally suspect I was a mafia member also. At trial most of the evidence and testimonies were directed at Trentacosta and Massaro not me and at the time these testimonies are given about Massaro and Trentacosta. I was forced to sit between them. You have to be very naïve to think the jury won't believe that I too was somehow involved in organized crime. If I would have been tried separately I surely would have not been found guilty. Prosecutors needed me with Massaro and Trentacosta to give some credibility to their Mafia Murder Hit even if it wasn't true. I should have tried separately in order to insure I had a chance at a fair trial. To force me to go to trial with Massaro and Trentacosta a guilty verdict was automatically stacked against me. I should have been given a new trial. And it should be based on evidence that directed solely towards me and me alone.

Direct Appeal of Ground Ten

1. This issue was raised on appeal.
2. The issue was denied by 11th Circuit Court of Appeals Docket No. 02-12352 on June 2004.
3. The issue was raised on a petition of certiorari in the United States Supreme Court on Docket No. 04-7614. The result was motion denied.
4. This issue never received any hearing either on Direct Appeal or Petition of Certiorari.

Ground Eleven

Ineffective assistance of Counsel. Pre-trial and trial (Namely Jeffrey Weinkle and Jerry Valasquez).

Supporting Facts

Trial counsel and Pre-trial Counsel were ineffective for the following reasons:

1. Attorney Jerry Valasques was not a. certified to handle Capital Murder Cases and b. even though Mr. Valasquez represented me before and during arrest he had no experience in murder cases what so ever.

2. After I requested Mr. Valasquez to set up a deal with the US Government due to his lack of experience I received a shady deal any attorney with experience in negotiations with law enforcement or state or government attorneys would have not allowed his client to enter a use immunity deal, any experience attorney would have pushed for a derivative immunity deal, and any competent lawyer would have stayed with his client during interrogations with police, or agents. Instead Mr. Valasquez left me alone and stayed out of the interrogations causing me the incident in which I asked 3 times for my attorney and Mr. Valasquez realizing his mistake, asked 3 times to have FBI agents allow him to see me. Such actions affected the whole outcome of the interrogation and this case, have Mr. Valasquez been more experienced in Law and certified to handle a murder case and federal cases the whole outcome of the trial would have drastically changed and the outcome would have changed. Mr. Valasquez neglected his client who was forced by Agent's to continue the interrogation even he asks to see counsel. I would have never needed to ask for him if he would have stayed with me. He could have advised me what and what not to answer, for whatever reasons. Mr. Valasquez neglected his duties and most important his obligation to his client. I also did not know Mr. Valasquez have just recently obtained his license to practice law nor did I know he had no experience in negotiations or certified to handle Capital offenses. Had Mr. Valasquez informed me of this I most surely would have taken another course of action, and sought a attorney with the proper certifications which would have resulted in this case outcome.

3. Mr. Jeffrey Weinkle misrepresented me and violated laws and rules of the Court. Example:
   A) Upon appointment by the Court, Mr. Weinkle asked this petitioner for money which is a violation of rules and law
   B) Mr. Weinkle represented a key government witness, Eric Bock, which Mr. Weinkle still represented during the proceedings of this case. This was a key ground for attorney dismissal which did not occur. Thus violating my rights to due process and proper representation during all proceedings and trial.
   C) Mr. Weinkle never conducted an investigation into my allegations of Police misconduct, such as illegal arrest, illegal search, illegal wire taps, coerced confession, and witness lying on depositions, police interviews, witness who can support my account of events. Never investigated over 45 discrepancies found by myself and my state court appointed attorney some which were so crucial the outcome could have resulted in dismissal of the case on a very different verdict.

Mr. Weinkle did a gross injustice to me and the jury, which had a right to the evidence he failed to disclose.

D)  Mr. Weinkle upon my request failed to provide me with copies of transcripts of court hearings. He also failed to ask key questions to witnesses who testifeied at the Motion to Suppress and trial.

E)  Mr. Weinkle refused to dismiss himself from my case. When attorney/client relationship was not productive. At several meetings with Mr. Weinkle arguments erupted into heated and at one point physical altercation in which a chair that was bolted to the ground was ripped off by me in which I almost hit Mr. Weinkle, the only barrier was a Plexiglas between him and I.

F)  Mr. Weinkle never visited or informed me of any progress in my case. Even before trial Mr. Weinkle never visited me but only 3 or 5 times and never told me what my defense was. Two months before trial I call Mr. Weinkle to inform him with my mother on the line that I did not want him to represent me at trial. I contacted Mr. Mathewman later and asked him to be Trial Counsel since he already knew the specifics of my case. During this time, Mr. Weinkle never visited or wrote me. At one point I was in Broward County Jail on a state related hearing in which I was only 1 week from my federal trial and Mr. Weinkle still did not tell me what the defense was. I had to force Mr. Weinkle to file a motion to have me brought back so that I could go to trial and upon my return I asked Mr. Weinkle to file a continuance so that Mr. Mathewson could prepare for my trial. Mr. Weinkle said that the Judge would not file for continuance. I was forced to go to court with an attorney whom I despised and who did nothing I asked him to do. During trial Mr. Winkle was more interested in playing with his laptop computer than observing the jury's response. Which at one point I tried to show him that a few jurors were falling asleep, when he ignored me, I brought the issue to Mr. Hadad (Massoro's Attorney) who asked the judge for a break in which the break was granted for 15 minutes.

G)  Mr. Weinkle was so poorly prepared that he only called one witness to the stand to testify who was Dr. Wright (a Medical Examiner Expert) completely going against my wishes. I never gave Mr. Weinkle that authority. I did however tell him I wanted to be well informed and before he did anything to run it by me first. Mr. Weinkle never did this. I told him I wanted to testify yet he never called me.

H)  Mr. Weinkle had evidence to show FBI Agent Groover and BSO Detectives Illaraza, Thomasevich, Devine, & Kallman, along with Sunny Isles Police Office LT. Fiesthammel made perjured statements on depositions and at the motion to suppress and most importantly at trial. Mr. Weinkle also had proof to show witness Accacia Lopez was indeed part of the check scheme. Had he subpoena the surveillance tapes from the Office Depot on Biscayne Blvd., and 175 Street, they would have shown Ms. Lopez receiving cash payments after she authorized the check purchase. Mr. Weinkle had evidence to show Det. Illaraza planted evidence at the hotel room and he also had video evidence to show a illegal entry to my apartment. I should still have this tape. Police and FBI didn't know I have the apartment under video surveillance. In this video it shows Det. Kallman taking a very expensive cigar lighter along with Flesthammel taking a black case with contained various computer programs and a leather black travel case which had

very expensive cigars. None of these items were placed into property nor were property receipts given. These items are for strange reason omitted on the property receipts. Just like the black pubic hair found on Jeanette Smith's body. That also was never tested for D.N.A. nor property receipt issue. Nor the fishing hook that was repeatedly used to hook the body of Jeanette Smith in order to keep it from floating away and also used to bring the body to shore. Mr. Weinkle denied this petitioner proper representation which would have ended in dismissal or acquittal. Mr. Weinkle went against my wishes to exploit this gross injustice which resulted in a illegal conviction. There was total failure all around by Mr. Weinkle towards me and the reason are to many to specifically list. After trial due to my Florida Bar complaint, Mr. Weinkle was put under investigation. As of today I still do not know what the outcome was. And worst Mr. Weinkle never informed that the government offered a 20 year deal had I known I would have taken the deal. I only found out about the deal at sentencing when Weinkle mentioned that the government offered the 20 years. Mr. Weinkle should have told me about the deal instead he chose not to inform me. I believe I had a right to about this 20 year deal. He (Mr. Weinkle) had a obligation to inform me which he never did.

## Direct Appeal On Ground Eleven

1. This issue was not raised.
2. Counsel for Appeal stated this would be an issue for 28 U.S.C. 2255 petition
3. This issue was never raised at any post conviction proceedings until now.

Ground Twelve

Sentencing errors require reversal

Supporting Facts

Petitioner was sentenced based on the judge finding and the pre-sentencing reports recommendations not the jury. A Judge cannot sentence a defendant beyond the maximum sentence based on facts that were not found by a jury. The government proposed a 20 year sentence if defendant cooperated. Trial Counsel informed the court that the maximum sentence was 20 to 25 years which is a life sentence according to guidelines. Judge Huck imposed a sentence of Natural Life to the Rico count and murder under Rico count as well. The jury made no determination as to the sentence should be Natural Life or Life. Judge Huck enhanced the sentence based on a judicial fining. I pointed out that according to Federal Statutes and Sentencing Guidelines establishes a base range of punishment. In my case, Judge Huck was required to enhance (extend) the sentence if the count found by preponderance of the evidence, when making these additional findings. The rules of evidence did not apply and the Court could consider and evidence and hearsay. This is not the case since the Supreme Court ruled that parts of the Federal Sentencing Guidelines could only be advisory, meaning guidelines are no longer mandatory. The Court also ruled it was unconstitutional to require the Federal Courts to increase a sentence length based on information provided to the Court at sentencing but was not proven by a jury beyond a reasonable doubt. And since this petitioner argues errors in jury instruction his sentence should be the 20 to 25 that is the maximum or same as life no the 2 Natural Lif given by the judge alone and since jury made no recommendations and Judge Huck did state at sentencing quote "It doesn't matter who Mr. Hernendez has or gets to testify on his behalf. I'm going to sentence him to life anyways" or something similar to this statement, sentence should be voided and a re-sentencing hearing granted.


Direct Appeal Ground Eleven

1. Sentencing issue raised on Appeal but the specific issue raised now not raised on Direct Appeal.
2. This specific issue was not raised on any post conviction motion.
3. No hearings on Ground Eleven what-so-ever
4. Reason Ground Eleven not specifically raised or appealed is that the Supreme Court ruled on this specific Ground on January 12, 2005. Two days after the Supreme Court denied a hearing on my case. The case ruled on was United States vs. Freddie Booker 125 S.Ct. 738

Ground Thirteen

Petitioner wishes to re-raise all issued raised on District Appeal based on new information.

Supporting Facts

1.  The evidence was insufficient to establish that Jeanette Smith's death was meant to further the interests of "The Gambino Crime Family".
2.  The District Court reversibly erred by failing to have key controverted portions of the trial transcribed.
3.  The District Court reversibly by failing to sever defendants
4.  The District Court reversibly erred by failing to suppress Ariel Hernandez's statement.
5.  The District Court abused its discretion by allowing evidence in violation of rules 403 and 404.
6.  Sentence errors required reversal and remand
    A.  Obstruction of Justice Adjustment was inapplicable
    B.  The sentence imposed violates Apprendi Vs. New Jersey, The District Court erred by imposing a Mandatory Life Sentence.
    C.  The District Court erred by refusing to continue sentencing.

District Appeal of Ground Thirteen

1.  All issues in Ground Thirteen were raised on Appeal and Denied
2.  The issue was not raised on any post conviction motions except Direct Appeal and Writ of Certiorari
3.  Supreme Court Hearing was denied
4.  Petitioner wishes to re-raised these issues based on new facts.

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: Appellant Counsel refused to raise this issue claiming it was trivial and had no merit because it wasn't at trial.

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: Grounds 1-4 and Grounds 5-8 and Ground 10 of this petition have not been previously presented in any federal court until now. Reason being Appellant's Appointed Counsel did not want to raise these issues in which his actions went against the petitioners who wanted them raised.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?    Yes ☐  No ☒
If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:
(a) At preliminary hearing: Mike Tenzer and Rhag Singal and Charles Kaplan

(b) At arraignment and plea: Jeffrey Weinkle and William Mathewman

(c) At trial: Jeffrey Weinkle

(d) At sentencing: Jeffrey Weinkle

Page 12

(e) On appeal: ___Richard  Rosenbaum and Jeffrey Weinkle who later___ ___withdrew at petitioner's request___

(f) In any post-conviction proceeding: __None__

(g) On appeal from any ruling against you in a post-conviction proceeding: __None__

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?      Yes ☒ No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?      Yes ☐ No ☒

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future: _____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☒  No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Page 14

Therefore, movant asks that the Court grant the following relief: Petitioner is
entitled to a new trial and should be represented
accordingly.

or any other relief to which movant may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct
and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _1-5-06_
_____ (month, date, year).

Executed (signed) on _____1-5-06_____ (date).

_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not
signing this motion. _____

_____

_____

IN FORMA PAUPERIS DECLARATION

_____

[Insert appropriate court]

* * * * *

SUPPLEMENTAL EXHIBITs

TO GRound NINE

From: Ariel Hernandez, #50776504
      Main Jail Bureau unit 7-D-1
      P.O. Box 9356
      Ft. Lauderdale, FL. 33310

United States District Court, Southern District of
Florida

United States of America,
                 Plaintiff,              case no. 00C - 6273 - CR - HUCK/BROWN
vs
Ariel Hernandez,
                 Defendant.
_____/

Memorandum To The Judge
--

Dear Your Honor,

    This defendant, Ariel Hernandez, is compelled to strongly abate,
object, and protest the actions of this Court -- forcing upon this
defendant a known counsel of conflict of interest for representation--
which affects a bias and prejudices against this defendant or in
favor of the Government, and how and how such actions are
causing this defendant as affecting the fairness of this appeal and
right to due process. May the action be reversed or corrected,

_____

                                        ( Cont'g )

page 2
Memo to Judge

or, may trial Judge Huck recuse himself and the order of the action in the appointment of a conflict counsel be remanded for fair, unbias and unprejudice consideration and judgment. This defendant avers the following in support:

1. This defendant was convicted of First degree murder and racketeering.[1] Defense trial counsel was Mr. Weinkle. After sentencing, counsel was granted a Motion to Withdraw, declaring, in addition, very serious "irreconcilable differences."[2]    On direct appeal, case was remanded back to trial Judge Huck for an important reconstruction portion of the record, involving played tapes before the jury, that the court reporter failed to record verbatim.[3]    During this reconstruction hearing, problems evolved which effects a bias and prejudice against this defendant or in favor of the Government, further effecting the fairness and due process of this appeal.

2. On September 8, 2003, date of commencement to the limited remand to reconstruct, Mr. Weinkle, former trial counsel, without invitation, suddenly stood and presented himself as counsel of record, declaring "Counsel for the defendant."[4] All to this defendant's shock. Protest and objections

_____                                   (next page)

[1]  Convicted December, 2001, of RICO and VICAR.

[2]  Motion to Withdraw as Appellate [sic] Counsel, July, 15th, 2002, granted. Emergency Motion to Withdraw as Co-appointed Counsel, October 2, 2002.

[3]  Remand granted June, 2003.

[4]  This "self-appointment" -- holding ulterior motives as strongly asserted by this defendant -- is contrary not only to very serious and malicious conflict of interest, but also note in Motion to Withdraw, one footnote 2.

page 3
mems. to Judge.

erupted from this defendant and his actual appellate counsel, Mr
Rosenbaum, to Weinkle's "self-appointment."

3. The problem. The problem at the limited remand hearing to reconstruct,
September 8 and 12, 2003, was an inability to accurately have a
crucial portion of the record reconstructed; leading only for the
Government and defense to stipulate that "tapes were played,"
but to no agreeable concensus as to what portions, order, and con-
tent. Leading to Judge Huck to appoint [conflict counsel] Mr.
Weinkle to defendant's team against defendant's objections, Huck
added, "I don't care what defendant wants, I'm doing this anyway,"
to remedy reconstruction's lack of concensus.          Disregarding
the following:


    a) That this defendant is entitled to conflict-free effective
assistance of counsel per the U.S. Constitution Amendment.
    b) That the Court, either by order or subpoena, could have
Mr. Weinkle turn over any physical evidence (i.e. notes) relative the
reconstruction-issue -- instead of forcing this defendant to accept a
counsel with whom very serious irreconcilable differences to include
distrust exist between this attorney and defendant.
    c) That the judge's forced appointment of a conflict-counsel
**negates** this defendant from questioning -- for accuracy, complete-
ness, and veracity -- information submitted in this defendant's name

(next page)

Page 4
memo. to Judge.

coming from a distrusted and questionable representation, as strongly
asserted by this defendant. Thus,

d) Judge Huck's forced appointment and disregard of defen-
dants objections is an action of prejudice and bias against this
defendant or in favor of the Government leading to violations in Due
Process and effective assistance of counsel rights, despite of other
visible alternatives such as b above.

4. Conclusion: "I never saw him take any handwritten notes of the
trial ... But I did see him enter + delete, enter + delete notes into
a laptop computer," asserts this defendant.          This may be notes
in reference to evidence notes on the reconstruction issue, because
on such a digital medium how does one check to authenticity from a
laptop system presumably in constant use +12 months after the trial §  Then
there is the latest false assertion, noted on the Emergency Motion
to withdraw -- that defendant was "content with Kaskin's trial
representation -- not only false, as attested by this defendant,
and contrary to the actual notice to withdraw from trial, see footnote 2,
but clearly meant to undermine the motion's very effort to withdraw
A specious undertaking which this defendant is all too aware, stemming
from the trial representation.  Adding, how does this defendant stop
this from continuing and, now, affecting his appeal, when, the same the
trial judge compelling upon this defendant the same "lacking" represen-
tation from trial §  There is no trust in this counsel.  Is anyone listening §

―――――――――――――――――――――――――――――――――――――――――――――
5                                                        (con't  page)
Misrepresentation, as harmful to the defendant, explicitly or expressly,
directly or indirectly, is exactly the content claimed and how this
defendant has of the matter.

page 5
memo to Judge.

5. Unnotarized oath. Under penalty of perjury, I, Ariel Hernandez, affirm that everything said in this memorandum is true.

Respectfully,

Date: _____

_____

encl.:                              Ariel Hernandez, # 50936654

1) letter, Clerk, 11th Cir., 9/1/03;

2) Emergency motion to withdraw, 10/2/03;

3) Government's response, 10/6/03;

4) Motion to withdraw, 9/17/03.

cc: Judge Huck; Mr. R. Rosenbaum; Ms. L. Hirsh; Mr. L. La Vecchio; Clerk of Court; Mr. J. Weinkle; my file.

p.s. This defendant has received information from the 11th Circuit Court of Appeals, clerk, now appointing Mr. Weinkle as this defendant's appellate counsel. Which begs the question: what are the chances that the Clerk randomly, or routinely, picked Weinkle? Obviously, someone, who this defendant suspects is the Government and/or Weinkle,[6] is perpetuating the unfairness of this conflict-counsel appointment. See attached clerk letter, 11th Cir., September 19, 2003.

_____

[6] Even the Government condones this appointment of a conflict-counsel upon this defendant, as noted in their motion to system appointment, because they know it serves them a tactical advantage, regardless of its unfairness. See Government response against counsel's motion to withdraw, dated October 6, 2003, attached.

LAW OFFICES OF

# RICHARD L. ROSENBAUM

350 EAST LAS OLAS BOULEVARD
SUITE 1700 • LAS OLAS CENTRE
FORT LAUDERDALE, FLORIDA 33301

RICHARD L. ROSENBAUM

TELEPHONE (954) 522-7007
FACSIMILE  (954) 522-7003
E-MAIL: Rlrappeal@aol.com

November 19, 2003

**LEGAL MAIL - ATTORNEY/CLIENT PRIVILEGE**
Ariel Hernandez, Arrest # 50996824
Broward County Main Jail
555 S. E. 1st Avenue
Ft. Lauderdale, FL 33301

     RE:  ***USA vs. Hernandez***

Dear Ariel:

     Enclosed please find a copy of the Order on Defendant's Personal Objection filed on November 10, 2003.

     To day, Jeffrey Weinkle has not yet filed his Motion to Withdraw at the Eleventh Circuit Court of Appeals.

     I shall continue to keep you posted of all developments.

                    Sincerely,

                    RICHARD L. ROSENBAUM

RLR:gmb
Enc.

1259-00001 369118.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6273-CR-HUCK

UNITED STATES OF AMERICA,
        Plaintiff,

vs.

ARIEL HERNANDEZ,
        Defendant.
_____/



REC'D by _____ D.C.
APPEALS

NOV 1 3 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA · MIAMI

## ORDER ON DEFENDANT'S PERSONAL OBJECTION

THIS MATTER came before the Court pursuant to Defendant, Ariel Hernandez's

Personal Objection to Mr. Weinkle's Co-Counsel Appointment (**D.E. #661**). The Court has

reviewed the Objection and will treat it as a motion to discharge his appellate co-counsel, Jeffrey

Weinkle and a motion to recuse the Court.

ORDERED and ADJUDGED that these motions are **DENIED.** The Court is without

jurisdiction with regard to Mr. Weinkle acting as Defendant's Co-Counsel on appeal. The

Defendant has not shown any basis for recusal of the Court.

DONE and ORDERED in Chambers at Miami, Florida this _10_ day of November, 2003.

PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

cc:    Lawrence Lavecchio, AUSA
       Lisa Hirsch, AUSA
       Richard Rosenbaum, Esq.
       Jeffrey Weinkle, Esq.
       Ariel Hernandez, #50996824
       Main Jail Bureau, Unit 7-D-1
       P.O. Box 9356
       Ft. Lauderdale, FL 33310

Date   December  8, 2003

From  Ariel A. Hernandez, # 56996854
       Main Jail Bureau, unit 7-D-1
       Po Box 9356
       Ft. Lauderdale, FL. 33310-9356


United  States  District  Court,  Southern District of Florida


United States of America
              Plaintiff          Case # 00-6273-cr-Huck

- vs -
Ariel A Hernandez,
         Defendant
_____/


            NOTICE  OF  Appeal


Defendant  gives notice to Appeal  Order on Defendants
Personal Objection, which Judge Huck treated as a
Motion to discharge As Appellate  co-counsel, Jeffrey
Weinkle And A Motion to Recuse the Court. This Motion
was  Denied. Other pertinent Facts follow:


1. Order  denying        was signed by Judge Huck
November 10, 2003, AND Received by the Clerk
Mr. Clarence Maddox, U.S. Dist. Ct. S.D. of Fla
on November 13, 2003  As stamped on the Order

2. DEFENDANTS' counsel, MR. RICHARD Rosenbaum, DID not FORWARD The ORder until November 20, 2003 (as stamped on the FORwarding envelope), on correspondence dated November 19, 2003.

3. Defendant did not recieved The Forwarded order until November 26, 2003; day before Thanksgiving).

4. Defendant prayerfully notes That he was scheduled for an Important December 5, 2003 hearing Before The Honorable Judge Mike Kaplan on case # 99-5930[1], AND Thus Involved in preparations For The scheduled date.

5) Defendant Adds That he is not A lawyer And His intentions Are to Appeal Judge Hucks' order, But does not know if The notice of Appeal will Arrive in time since defendant has no control As to when The Facility of Incarceration will send his Letter out to The Postal office[2], Defendant is being ernest in meeting the 10 DAY Limit And If notice of Appeal is late Please take into consideration The global situation of Defendants Incarceration, and lack of knowledge of procedures of the Court, Supplemental papers will follow since defendant is deprived of a

copy machine, All copies have to be hand
written in addition Defendant is Limited
to Access to his attorney in the Facility

---

1 Defendant is Facing The same charges conducted
in Federal Court, but under State Statites
And law case no # 99-5930 Honorable Judge
Mike Kaplan.


2. Inmate is Incarcerated in a Maximum security
unit of The Broward County Jail And is
Subject to intense security checks including
cell, Attorney visits And correspondence into
And From The Facility, Therefore Causing many
unwanted delays

---

Defendant Affirm That everything said Herein This
motion is true.


c Certificate of Service : The undersign certifies that
A true And Correct copy of The foregoing Defendants
Notice of Appeal Including A Honorable Judge Huck,[3]
b Clerk of Courts,[3] c Mr Richard Rosenbaum And d Lisa Hirsh [esq.3]
Fee - Individually Addressed copies were given to an

official in charge of my custody who also handles out going mail via In-house mail on US. Postal Service on This 8th day of December 2003

Date December 8, 2003.

Respectfully Submitted

Ariel A Hernandez
DEFendant / Appellant

A° B° A United States District Court, Southern District of Florida, Office of The Clerk  301 N. Miami, Ave. Room 150, Miami, Fla. 33128-7788 ( Clerk And Honorable ~~Fart~~ Judge Huck. )

C B Richard Rosenbaum ESQ. 350 EAst Las OLAs BLVD Suite 1700 Las OLAs Center, Ft Lauderdale, Fla, 3330

D B Lisa Hirch ESQ. Assistant United States Attorney 99 N.E. 4 street, 8th Floor, Miami, Fla, 33132

In the United States Courts of Appeals
For the Eleventh Circuit

United States of America     CASE NO 006-6273 CR/Hu
       Appellee,     Appeal no. 02-12332-A

-vs-
Ariel A Hernandez
       Appellant

Motion For Extension of Time to File
Appeal On Judge Hucks' denial to Recuse
Himself And Denial to Dismiss Co counsel
Weinkle.

Now Comes The Appellant Files This Motion
pursuant to Whichever Applicable Laws And Rules,
And seeks A 60 Day Extension or As Reason-
Able Deemed by This Court to File An Appeal
pertaining to Judge Hucks Ruling.

1.

On November 3, 2003 Appellant sent A
Letter of Personal Objections to Judge Hucks'

Appointment of Co-Counsel Weinkle, AND to Judge Hucks prejudice on The Limited RemAND Hearing on September 8, 2003.

2.

On November 26, 2003 Appellant Recieved AN ORDER DENYING HIS LETTER which Judge Huck took AS A pro se[1] motion to Recuse Himself AND DISMISS co-counsel Weinkle.

3.

On December 8, 2003 After finding out Appellants' Letter was takEN AS A motion ANd denied by Judge Huck Appellant Filed a Notice to Appeal on said DAte.

4.

Appellant is waiting FoR Court Records of The EvidENtAARy Hearing involving Judge Huck's RecusAL AND DismissAL of Weinkles Appointment (which occurred on Sept 8 2003) which Are pertinent to This Appeal.

5.

The Appellant has been granted an ORDER to be tRANsfered BACK to Federal Custody.

NOTE:1 Appellant is pursuing This PRo se Because This Cause was Accepted by Judge Huck As A pro se motion

-2-

Appeallant is now on Transfer Status in the Broward County Main Jail, Therefore placing him on a Maximum Security Unit of the County Jail and Limiting his Access to a proper Law Library Containing Federal Books, Appeallant is only given 40 minutes A week to Law Library Access.

5.

Appeallant has no Formal Education, training nor Experience in Judicial Matters of any court; Therefore Appeallant seeks more time for preperations than it would normally take A trained Professional in Law.

6.

This Request is submitted in good Faith for the Reasons stated Above, Barring unexpected circumstances.

Respectfully, Submitted

Ariel A Hernandez
# 50971824
Broward County Main Jail
P.O. Box 9356
Ft Lauderdale, Fla. 33310-9356

-3-

# CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within foregoing Motion For Extension of Time to File Appeal on Judge Huck's denial to recuse himself and dismiss Co-Counsel Weinkle upon the following via U.S. Mail:

Marcos Daniel Jimenez
United States Attorney
Attorney For Appellee
99 N.E. 4th Street
Miami, Florida, 33133-2111

Anne R. Schultz, Esq
Chief Appellate Division
99 N.E. 4th Street 8th Floor
Miami, Florida, 33132-2111

Richard L. Rosenbaum, Esq.
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida, 33301
(Counsel For Appellant Hernandez)

This the 12th day of December, 2003

- 4 -

DATE FEBRUARY 27, 2004

FROM ARIEL A HERNANDEZ #50996824
MAIN JAIL BROWARD COUNTY
P.O. BOX 9356
Ft. LAUDERDALE, Fl. 33310-9356

UNITED STATES District Court, SOUTHERN District of FLORIDA

CASE NO 00-6273-CR-HUCK

UNITED STATES of AMERICA,
                    PLAINTIFF

-V-
ARIEL A HERNANDEZ,
                    DEFENDANT

MEMORANDUM to THE JUDGE

DEAR YOUR HONOR,
THIS DEFENDANT, ARIEL A. HERNANDEZ, is compelled to
strongly ALERT, object AND protest THE Actions of this Court
Forgoing UPON this DEFENDANT, THE Court REPORTER At
THE Limited REMAND HEARING on September 8 AND 12, 2003
AGAIN FAILED to TRANSCRIBE verbatim what TRANSPIRED
AT THIS HEARING wich effects A biAs, AND prejudice
AGAINST THIS DEFENDANT OR IN FAVOR OF THE GOVERMENT,
AND HARM AND FEAR, such Actions ARE causing THE
DEFENDANT AS EFFECTING THE FAIRNESS OF THIS APPEA

PJ 2
Memo to Jud.

AND Right to Due Process, MAY The Actions bE REVERSED OR CORRECTED, So That This DEFENDANT CAN be subject to A FAIR, UN-biAS, AND UN-preJUDICAL JudgeMENT. This DEFENDANT AVERS The Following in Support.

1. This DEFENDANT WAS CONVICTED of first DEGREE MURDER AND RACKETERING, [2] On DIRECT APPEAL, CASE WAS REMANDED bACK to triAL Judge Huck for AN ImportANT RECONSTRUCTION portion of the RECORD, Involving PlAyED tApES BEFORE The JURY, That The Court Reporter FAILED to RECORD VERBATIM, [2] During This RECONSTRUCTION HEARING, problem EVOLED wich effects A bIAS, AND prejudice AGAINST This DEFENDANT OR in FAVOR of The GOVERMENT, FURTHER effecting The FAIRNESS AND DUE process of This AppEAL.

2. On September 8, 2003 DATE of COMMENCEMENT to The Limited REMAND to REConstruct, Judge Huck MADE SEVERAL COMMENTS ON RECORD, [3] That cAN only be deemeD preJUDICAL to This DEFENDANT. A) This being The Re-Appointment of CONFlicting Counsel Jeffrey Weinkle B) On September 8 AND 12 of 2003 There WAS AN INAbility to AccurAtely hAve cRUCIAL portions of The RECORD REconstructeD! LEADING only For The GOVERMENT AND DEFENSE to stipulAte That "TApES were playeD" but no AGREEABLE

Pg 3
memo to July

CONSENSUS As to what portions, ORDER, AND Content.

PROBLEM!

3. ON DECEMBER 2003⁴, This defendant Recieved A copy of THE transcripts to The Limited REMAND HEARING on September 8 AND 12 of 2003. AND to This DEFENDANTS' Suprise, Key portions of This Limited REMAND Hearing of September 8 AND 12 were not transcribe verbatim, Such As in Support!

A.) Judge Hucks' CONFLICTED Re-Appointment of Jeffrey Weinkle

B.) Judge Hucks' prejudicial REMARKS stating "I Dont CARE what The DEFENDANT WANTS. I Am doing This ANY WAYS" ( CONCERNING Weinkles' Re-Appointment )

C.) Appealant COUNSEL Richard Rosenbaums' objections AND protest to Weinkle's Re-Appointment ( SEE G)

D.) DEFENDANTS' OWN objections AND protest to Weinkle's Re-Appointment.

E.) Judge Hucks' comments At The LIMITED REMAND Hearing stating he WAS A witness AND HAD Recollections As to what tapes were played & CLEARLY taking SIDES with The Government.

F.) Comments AND Objections MADE by CHarles Lee AND DONALD SAmmuel, Appealant Counsels for Trentecosta.

Pg 4
MEMO to Jud

G.) DEFENDANTS COUNSEL RICHARD ROSENBAUM has STATED to This DEFENDANT. That "HE clearly REMEMBERS This DEFENDANTS AND HIS own objections AND protest to MR. Weinkle's Re-Appointment. (These objections AND protest were omitted From The Limited REMAND Hearing on September 8, 2003 TRANSCRIPTS, As well As other omitted portions.)

4. Conclusion:

This DEFENDANT Asks How can The Court be Intrusted AND not be prejudical, When The issues At The Limited REMAND (wich were the court Reporter Failed to transcribe Verbatim Key portion of The trial,[5] Now occurs Again At The Limited REMAND Hearing of September 8 AND 12 of 2003.[6] RAISing This DEFENDANTS Distrust in the Court to A Fair, unbais, AND un-prejudical due process of the LAW. ADDing How Does The Defendant Stop this From Reoccuring, AND Now effecting his Appeals. Is Anyone Listening?

---

Footnotes:

1 Convicted December, 2001 of Rico AND VICAR

2 Judge Hucks Reappointment of conflicted co-counsel Jeffrey Weinkle. (september 2003)

3 REMAND GRANTED JUNE 2003

Pg 5
MEMO to Ju

4. DECEMBER 2003, DEFENDANT RECIEVES A COPY OF THE TRANSCRIPT OF THE LIMITED REMAND HEARING FROM HIS APPEALLANT COUNSEL RICHARD ROSENBAUM

5. Trial COMMENCED NOVEMBER 2001 ENDED IN DECEMBER 2001

6. Limited REMAND HEARING conducted on September 8 AND September 12, 2003.

5   UNNOTARIZED OATH, UNDER penalty of PERJURY, I, Ariel A Hernandez, AFFIRM THAT EveryThing SAID IN THIS MEMORADUM is true

Respectfully

ARIEL A. HERNANDEZ
# 50996824.

cc. Judge Huck
    Richard Rosenbaum ESQ
    Ms L Hirsh ESQ
    MR. LAVECCHEO ESQ
    Clerk of Court
    My File

PS This DEFENDANTS COUNSEL Richard Rosenbaum has deligently tried to Recieve A true AND Accurate transcript from The Court Reporter on This September 8 AND 12th, 2003 Limited REMAND HEARING.

DATE April 29, 2004


FROM Ariel A. Hernandez
Main Jail Broward County
P.O. Box 9356
Ft Lauderdale Fl 33310-9356


United States District Court, Southern District
of Florida


United States of America
            Plaintiff

vs-

Ariel J. Hernandez
            Defendant


MEMORANDUM to the Judge


DEAR your Honor
This Defendant, Ariel A. Hernandez, is
compelled to strongly object and protest
the actions of this court against upon
this Defendant. On March 30, 2004 This
Defendant Received A Response from Judge
Huck on A Limited Remand hearing on
September 21 and 22 of 2004, concerning

A very important issue wich was the court Reporter Failed to transcribe verbatim wipt Transpired at this Hearing, wich at this Hearing was scheduled because at trial the court Reporter Failed to transcribe verbatim portions of the trial, wich effects a bias and prejudice against this Defendant, or in Favor of the government, and harm, and Fear, such actions are causing the Defendant as effecting the fairness of this Appeal and Right to Due process, May the Actions be Reviewed or corrected, so that this Defendant can be subject to a Fair, un-bias, and un-prejudical Judgement. The Defendant feels the following in support.

1. This Defendant was convicted of First Degree Murder and Racketeering.[1] On Direct Appeal, case was Remanded before the Judge Huck For An impartial, Reconstruction portion of the Record, involving played tapes before the Jury, that the court Reporter Failed to Record verbatim.[2] During this Reconstruction Hearing problem arised wich effects a bias

... Prejudice Against This Defendant or in Favor of the Government, Further effecting The fairness and Due process of This Appeal

2. On September 8, 2003 Date of commencement to the Limited Remand to Reconstruct, Judge Huck made several comments on Record,[3] that can only Be Deemed prejudicial to This Defendant A) This being The Re Appointment of conflicting counsel Jeffrey Weinkle B) On September 8 and 12 of 2003 There was no ability to accurately have crucial portions of the Record Reconstructed; leaving only For the Government in a Defense to stipulate Their tapes were played" but no Agreeable consensus As to what portions, order And content.

Problem:

3. On December 2003[4] This Defendant Recieved a copy of The September 8 and 12 transcripts and to this defendants suprise, Key portions of this Limited Record hearing of September 8 and 12 were not transcribe verbatim

This Defendant Responed in the Same Manner
As before when defendent wrote a Memorandum
to Judge Huck concerning Mr. Weinkles
Reappointment As Appealant co-counsel
wich Judge Huck look As A motion and
Denied, Now This Defendant Submitted A
Second Memorandum concerning the Transcripts
of the Limited Remand Hearing of September 8 AND
12. of 2003, AND Judge Huck PREJUDICAL
Remarks Towarrs This Defendant, This time
Judge Huck Responed by saying That
"He can't Consider my memorandem because
I am Represented by counsel," Clearly
fishing and choosing wich memorandums
He wants to Answer, clearly being
prejudicial to the Defendant such As
in Support:

A). Judge Hucks conflicted Reappointment of
Jeffery Weinkle

B). Judge Hucks prejudical Remarks stating, "I
Don't care what the defendants wants, I am
doing This Anyway" (concerning Weinkle
Reappointment)

C) Appellant Counsel Richard Rosenbaums objections And Protest to Weinkles' ReAppointment (see G)

D) Defendants own objections And protest to Weinkles Re Appointment

E) Judge Hucks comments At the Limited Remand Hearing stating he was A witness And HAD Recollections As to what tapes were played (Clearly taking sides with the Government

F) Comments And objections made by Charles Lee And Donald Sammuel, Appellant Counsels For Trentt Costa

G) Defendants' Counsel Richard Rosenbaum [   ] stated to this Defendant, that "He clearly Remembers This Defendants And his own objections And protest to the Weinkles Re Appointment which were omitted from the Limited Remand Hearings transcripts of September 3 and 4 of 2003 As well As other omitted portions

H) Defendants Counsel Richard Rosen [   ] has advised This Defendant to personally object and protest These at least Three omitted portions of the Limited Remand

HEARING AND to provide him with copies
of any motions, MEMO RANDUMS, OR objections
This DEFENDANT files ON his OWN BEHALF

I) Counsel Richard Rosenbaum HAS no objections
to This DefendANt filing motions or
memorANdums OR objections concerning
the omitted portions of the Limited
Remand Hearing of September 8 AND 12
AND EVEN ENCOURAGED. This Defendant to so do

4. Conclusion

This DEFENDANT ASKs HOW CAN the court be entrusted
And Not to be prejudicAL, When issues At the
Limited RemAND (wich were the court RepoRteR
FAiled to trANscribe verbAtim Key portions
of the trial)[5] Now occurs AgAin At the Limited
Remand Hearing of September 8 and 12 of Doing[6]
Causing This Defendants, **Distrust in the Court**
for FAIR, unbias, And unprejudicAL due
process of the LAw, AdDing How Does the
Defendant **STOP THIS FROM REOCCURING,**
And now effecting his Appeals. Does Anyone
CARE? Is Anyone Listening?

Footnotes:

1. Convicted December, 2001 of Rico and Vicar

2. Judge Hucks Reappointment of conflicted co-counsel Jeffrey Weiner (September 2003)

3. Remand granted June 2003

4. December 2003. Defendant Recieves a copy of the transcripts of the Limited Remand Hearing from his Appellate Counsel Richard Rosenbaum

5. Trial commenced November 2001 ended in December 2001

6. Limited Remand Hearing Conducted on September 9 __ __ __ 2003

---

5. Unnotarized oath under penalty of perjury, I, Ariel A Hernandez, Affirm That everything said in this memorandum is true

Respectfully

Ariel A Hernandez
# 50996811

cc: Judge Huck
    Clerk of Court
    ____ L Weiner ESQ
    Richard Rosenbaum ESQ
    Chief Justice W.R. Zloch
    My File

# United States Court of Appeals

Eleventh Circuit

56 Forsyth Street, N.W.

Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

In Replying Give Number
Of Case And Names of Parties

January 05, 2004

Ariel Hernandez (50996824)
Main Jail Bureau, Unit 7-D-1
PO BOX 9356
FORT LAUDERDALE FL 33310-9356

RE: 02-12352-AA      USA v. Frederick J. Massaro
DC DKT NO.:  00-06273 CR-PCH

---

I am returning to you unfiled the pro se papers which you have submitted.  Because you are
represented by counsel, the rules of this court do not allow us to accept these papers from
you.  <u>See</u> 11th Cir. R. 25-1 and 11th Cir. R. 28-3.  We suggest that you communicate with
your attorney concerning issues or arguments which you believe should be presented to the court.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Shirley M. Brown (404) 335-6170

Encl.

PRO-3 (8-2000)

LAW OFFICES OF

# RICHARD L. ROSENBAUM

350 EAST LAS OLAS BOULEVARD
SUITE 1700 • LAS OLAS CENTRE
FORT LAUDERDALE, FLORIDA 33301

RICHARD L. ROSENBAUM

TELEPHONE (954) 522-7007
FACSIMILE (954) 522-7003
E-MAIL: Rlrappeal@aol.com

December 23, 2003

**LEGAL MAIL - ATTORNEY/CLIENT PRIVILEGE**
Ariel Hernandez, Arrest # 50996624
Broward County Main Jail
555 S. E. 1st Avenue
Ft. Lauderdale, FL 33301

RE:    *USA vs. Hernandez*

Dear Ariel:

I am in receipt of your *pro se* Notice of Appeal, received in my office on December 19, 2003. Because I have not been appointed by the Court to represent you on the appeal, I am returning the Ordering and Designation of Reporter's Transcripts forms which you forwarded to me.

Please contact me upon receipt of this correspondence so that we may discuss the status of this matter more fully.

Sincerely,

RICHARD L. ROSENBAUM

RLR:mlc
Encls.

1259-00001 369284.1

*3 copies*

# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia  30303

**Thomas K. Kahn**
Clerk

In Replying Give Number
Of Case And Names of Parties

December 17, 2003

Ariel Hernandez
#50996824
Main Jail Bureau, Unit 7-D-1
P.O. Box 9356
Fort Lauderdale  FL  33310

RE: 03-16350-A          USA v. Ariel Hernandez
DC DKT NO.:  00-06273 CR-PCH

**THIS CIVIL APPEAL IS GOVERNED BY <u>MORE STRINGENT</u> PROCEDURES FOR REQUESTING EXTENSIONS OF TIME TO FILE BRIEFS AND RECORD EXCERPTS.  RULES PROVIDE FOR <u>DISMISSAL WITHOUT FURTHER NOTICE</u> WHEN A BRIEF OR RECORD EXCERPTS IS NOT FILED OR CORRECTED WITHIN THE TIME PERMITTED.  PLEASE SEE THE CIRCUIT RULES AT <u>WWW.CA11.USCOURTS.GOV</u>.**

The referenced case was docketed in this court on December 15, 2003.  Please use the appellate docket number noted above when making inquiries.  An appeal may be dismissed for failure to comply with the Federal Rules of Appellate Procedure and the rules of this court. Motions for extensions of time to file a brief are frowned upon by the court.

Pursuant to 11th Cir. R. 12-1, the record in this appeal was deemed completed and filed on the date the appeal was docketed in this court.  Eleventh Circuit Rule 31-1 requires that APPELLANT'S BRIEF AND RECORD EXCERPTS BE SERVED AND FILED WITHIN FORTY (40) DAYS FROM THE DATE THE APPEAL WAS DOCKETED IN THIS COURT.  This is the only notice you will receive concerning the due date for filing briefs and record excerpts. (In cross-appeals pursuant to Fed.R.App.P. 28(h), the party who first files a notice of appeal is the appellant unless the parties otherwise agree.)  See Fed.R.App.P. 28, 30, 31 and 32, and the corresponding circuit rules, for further information on preparing briefs and record excerpts

In addition to providing the required number of paper copies of briefs, all parties (except pro se parties) are required, additionally, to provide briefs in electronic format as described in 11th Cir. R. 31-5 and the enclosed instructions.  Electronic briefs must be in Adobe Acrobat® PDF file format.  The electronic brief must be completely contained in one PDF file, i.e., cover page through and including the certificate of service.  The address wrapper accompanying this letter contains counsel's individual identification number (User ID) for electronic brief uploading.  When uploading a brief for the first time, you will be prompted to create a password known only by you for all future uploads.

Counsel who wish to participate in this appeal must complete and return an appearance form within fourteen (14) days.  Appearance forms are available on the Internet at www.ca11.uscourts. gov.  The clerk may not accept **motions or other filings** from an attorney until that attorney files an appearance form.  See 11th Cir. R. 46-1(d).

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Deborah Owens (404) 335-6180

Encl.

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

January 10, 2005

Mr. Richard L. Rosenbaum
350 East Las Olas Blvd.
Suite 1700, Las Olas Centre II
Fort Lauderdale, FL  33301

      Re:  Ariel Hernandez
            v. United States
            No. 04-7614

Dear Mr. Rosenbaum:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

William K. Suter, Clerk



Richard L. Rosenbaum
    Law Offices of Richard L. Rosenbaum
    350 E. Las Olas Blvd.-Suite 1700
    Fort Lauderdale FL 33301

RECEIVED
JAN  8 2004
By_____

January 05, 2004

RE: 02-12352-AA     USA v. Frederick J. Massaro
DC DKT NO.: 00-06273 CR-PCH

TO:    Ariel Hernandez (50996824)

CC:    Jeffrey David Weinkle

CC:    Donald Samuel

CC:    Richard L. Rosenbaum

CC:    Lawrence D. LaVecchio

CC:    Anne R. Schultz

CC:    Lisa A. Hirsch

CC:    Eduardo I. Sanchez

CC:    Administrative File

# United States Court of Appeals

Eleventh Circuit

56 Forsyth Street, N.W.

Atlanta, Georgia  30303

**Thomas K. Kahn**

Clerk

In Replying Give Number

Of Case And Names of Parties

January 05, 2004

Ariel Hernandez (50996824)

Main Jail Bureau, Unit 7-D-1

PO BOX 9356

FORT LAUDERDALE  FL  33310-9356

RE: 02-12352-AA        USA v. Frederick J. Massaro

DC DKT NO.:  00-06273 CR-PCH

I am returning to you unfiled the pro se papers which you have submitted.  Because you are represented by counsel, the rules of this court do not allow us to accept these papers from you.  <u>See</u> 11th Cir. R. 25-1 and 11th Cir. R. 28-3.  We suggest that you communicate with your attorney concerning issues or arguments which you believe should be presented to the court.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Shirley M. Brown (404) 335-6170

Encl.

PRO-3 (8-2000)